**ROSE CITY PAPER BOX, INC., an Oregon corporation, Plaintiff,**

v.

**EGENOLF GRAPHIC MACHINE INTERNATIONAL, INC., an Indiana corporation; Paul Egenolf & Associates, Inc., an Indiana corporation; and Paul Egenolf, individually, Defendants.**

**Civ. No. 92–1061–FR.**

United States District Court, D. Oregon.

Aug. 4, 1993.

Nancy S. Tauman, Nelson L. Walker, E. Anderson Daniel, Hibbard, Caldwell & Schultz, Oregon City, OR, for plaintiff.

Michael R. Seidl, Janet L. Atwill, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of defendants for summary judgment (# 45).

### UNDISPUTED FACTS [1]

This action arises out of the sale of a printing press, rebuilt and sold by defendants, Egenolf Graphic Machine, Paul Egenolf & Associates, Inc., and Paul Egenolf (collectively, Egenolf) to plaintiff, Rose City Paper Box, Inc. (Rose City).

On October 30, 1987, Egenolf entered into a contract with Rose City for the sale to Rose City of a rebuilt Miehle 38″ × 50″ six-color printing press for the sum of $450,000, payable in installments of $45,000, $360,000 and $45,000, respectively. The contract also included the following warranty: *"TERMS OF SALE* This machine is inclusive of a six (6) month print and register warranty, which also includes all parts and labor needed. . . ."* Exhibit 1 to Affidavit of Richard Safranski, p. 3.

On October 30, 1987, the day the contract was signed, Rose City made a down payment of $45,000. Rose City made an additional payment of $360,000 to Egenolf on March 25, 1988. Rose City was to make the final payment of $45,000 thirty days after the printing press began production. Rose City has not made the final $45,000 payment.

The last parts of the printing press were delivered to Rose City the first week in May, 1988. Egenolf completed the assembly and installation of the printing press in mid-June, 1988. Shortly thereafter, Rose City concluded that the printing press was not printing properly and had "start-up" problems. Rose

---

1. Plaintiff failed to comply with L.R. 220–10(b), which requires the party opposing a motion for summary judgment to file a separate concise statement of material facts. Therefore, the concise statement of material facts set forth by defendants is deemed admitted. *Id.* at (f).

City arranged for third-parties to repair the printing press. Rose City also contacted Egenolf about these problems. Egenolf sent one of its employees, Clarence Hudson, to work on the printing press. Hudson completed his assignment before July 4, 1988. Egenolf also sent Bill Mitchell of B.J. Press Repair, Inc. to inspect and service the printing press. Mitchell completed his assignment before July 17, 1988. Rose City contracted for outside printing services on numerous occasions between mid-June and July 17, 1988 because of the problems with the printing press.

Rose City filed its complaint on July 17, 1992, alleging claims for breach of the implied warranty of merchantability, breach of the implied warranty of fitness, and breach of an express warranty. Egenolf has filed counterclaims for an account stated, seeking payment of the final installment on the contract of $45,000, and for breach of contract.

## CONTENTIONS OF THE PARTIES

Egenolf moves the court for an order of summary judgment in its favor arguing that 1) the claims of Rose City for breaches of the implied warranties of merchantability and fitness are time barred; 2) the claim of Rose City for breach of an express warranty is time barred; and 3) the final payment of $45,000 is due and owing for the printing press.

Rose City contends that there are genuine issues of material fact concerning the dates on which the causes of action accrued, and therefore Egenolf's motion for summary judgment is not appropriate on the claims of Rose City for breaches of the implied warranties of merchantability and fitness and for breach of an express warranty. Rose City further contends that Egenolf is not entitled to summary judgment on its counterclaim for the final payment of $45,000 because there are genuine issues of material fact concerning whether the printing press has ever been able to produce commercially acceptable printing, and the final payment was conditioned upon the printing press operating in a commercially acceptable way.

## APPLICABLE STANDARD

■ Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." The rule does not require that there be no factual disputes. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ A material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

## ANALYSIS

1. *Claims for Breaches of the Implied Warranties of Merchantability and Fitness*

■ The claims at issue are governed by a four-year statute of limitations. O.R.S. 72.-7250. Rose City filed its claims for breaches of the implied warranties of merchantability and fitness on July 17, 1992. Therefore, if the causes of action accrued before July 17, 1988, the claims are time barred and Egenolf is entitled to summary judgment on these claims.

Egenolf argues that the evidence is undisputed that the printing press was installed by mid-June, 1988 because Rose City filled certain orders for printing using the printing press during the month of June, 1988, and therefore the causes of action for breach of the implied warranties of merchantability and fitness accrued in June, 1988.

Rose City argues that a cause of action for the breach of an implied warranty accrues only upon the installation of a printing press that conforms to the terms of the contract. Rose City contends that the printing press did not conform to the terms of the contract until after July 17, 1988. Rose City contends that there is a genuine issue of material fact concerning the date upon which the printing press was capable of printing six colors in a commercially acceptable manner, and that until the printing press was capable of printing six colors in a commercially acceptable manner, the installation of the printing press was not complete.

The parties agree that the contract between them is governed by the Uniform Commercial Code. *See* O.R.S. 72.1010 *et seq.* Under the Uniform Commercial Code, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made...." O.R.S. 72.7250(2). "Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable the buyer to take delivery." O.R.S. 72.5030(1).

■ Despite the use of the phrase "conforming goods" in the statutory definition of "tender of delivery," courts have held that a cause of action for breach of warranty accrues at the time of delivery and installation, not at the time of conformity or acceptance. This issue was discussed in *Ontario Hydro v. Zallea Sys., Inc.,* 569 F.Supp. 1261, 1267 (D.Del.1983):

Hydro [the buyer and the plaintiff] says that since the expansion joints were not "conforming goods" within the meaning of the contract, there never was a tender of delivery and the statute of limitations has not yet run....

....

If the Court were to apply the phrase as Hydro suggests, then until the seller tenders conforming goods, the limitation period provided in § 2–725 would never apply. This would circumvent the very purpose of § 2–725, which, as discussed above, is to provide a finite period in time when the

seller knows that he is relieved from liability for a possible breach of contract for sale or breach of warranty.

The court agrees with this analysis. Therefore, as a matter of law, tender of delivery of the printing press occurred and the cause of action accrued when Rose City printed certain orders on the printing press in mid-June, 1988. This suit was filed more than four years after the cause of action for breaches of the implied warranties of merchantability and fitness accrued; therefore, the motion of Egenolf for summary judgment on the claims of Rose City for breaches of the implied warranties of merchantability and fitness is granted.

2. *Claim for Breach of an Express Warranty*

■ Where future performance is expressly warranted, the accrual of a cause of action for breach of an express warranty is extended to the time of the warranted performance. O.R.S. 72.7250(2) provides:

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that *where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.* (Emphasis added).

The text of the express warranty at issue here is as follows: *"TERMS OF SALE* This machine is inclusive of a six (6) month print and register warranty, which also includes all parts and labor needed...." Exhibit 1 to Affidavit of Richard Safranski, p. 3.

Rose City argues that the language of the express warranty includes not only an express warranty for parts and labor for six months, but also an implied warranty that the printing press would produce commercially acceptable six-color process printing for six months. Rose City argues, in the alternative, that even if the court does not construe the language of the warranty as one for future performance, it should find the

language ambiguous and deny the motion for summary judgment.

Rose City argues that industry custom delays the running of the period of time that a repair warranty is valid until the time that a buyer acknowledges that the printing press is making production runs in a commercially acceptable manner. Rose City contends that the acknowledgement by the buyer is called "signing off," and that there was no such "signing off" by Rose City on this contract.

Rose City further contends that the doctrine of "repair estoppel" precludes Egenolf from using the statute of limitations to bar its claim for breach of an express warranty. Rose City explains that the doctrine of repair estoppel is implicated by Egenolf's early attempts to repair the printing press and the representations of Egenolf through December, 1988 that the repairs would cure the defects in the printing press.

Egenolf argues that the six-month express warranty in the contract is a "repair and replacement" warranty. Egenolf explains that since the future performance exception to the doctrine of repair estoppel does not apply, the cause of action for breach of an express warranty accrued upon the delivery and installation of the printing press in mid-June 1988.

Egenolf contends, in the alternative, that even if the future performance exception to the doctrine of repair estoppel applies, the cause of action for breach of an express warranty is time barred. Egenolf explains that the future performance exception to the doctrine of repair estoppel delays accrual of the statute of limitations only until the date when the breach is or should have been discovered. Egenolf asserts that, because Rose City first discovered the defects in the printing press in June, 1988, Rose City's cause of action for breach of express warranty accrued in June, 1988.

■ The warranty expressly guarantees the performance of the printing press to meet the commercially acceptable standards for a printing press for a period of six months. Therefore, the cause of action accrued when the defects were or should have been discovered. Rose City discovered the defects in the printing press in mid-June, 1988. Therefore, the claim of Rose City for breach of an express warranty is time barred.

■ The doctrine of equitable estoppel cannot rescue the claim of Rose City for breach of an express warranty. The doctrine of equitable estoppel arises when the facts show a false representation, made with knowledge of the falsity of the representation and the other party's ignorance of the false representation. *See Coos County v. Oregon*, 303 Or. 173, 180–81, 734 P.2d 1348 (1987). Rose City comes forth with no facts that indicate that Egenolf willfully made false representations. There are no facts to indicate that Rose City had contact of any kind with Egenolf after January 9, 1989.

The court finds, as a matter of law, that Rose City's cause of action for breach of an express warranty accrued in mid-June, 1988. Because Rose City's claim for breach of an express warranty was brought more than four years after the cause of action accrued, the motion of Egenolf for summary judgment on the claim of Rose City for breach of an express warranty is granted.

## 3. Counterclaims for an Account Stated and Breach of Contract

Egenolf contends that it is entitled to summary judgment on its counterclaims for payment of the remaining $45,000 due on the contract. Egenolf argues that Rose City has admitted, and therefore expressly agrees, that the balance of $45,000 is due and owing to Egenolf. Therefore, Egenolf contends, no material question of fact exists concerning its entitlement to summary judgment on its counterclaims for an account stated and for breach of contract. Egenolf also contends that the language of the contract provides that payment is due thirty days after the printing press is in production, and that the printing press was in production by mid-June, 1988.

■ Rose City contends that Egenolf is not entitled to summary judgment on its counterclaims for an account stated and for breach of contract. Rose City argues that it never impliedly or expressly agreed at any

time that the remaining $45,000 is "due and owing." Rose City further argues that since the printing press has never been capable of producing commercially acceptable six-color process printing, the final payment, which Rose City contends was conditioned upon Egenolf providing a commercially acceptable six-color printing press, never became due.

Egenolf's counterclaim for an account stated is governed by the same four-year statute of limitations as provided in O.R.S. 72.7250. *Moorman Mfg. Co. v. Hall,* 113 Or.App. 30, 830 P.2d 606, *rev. denied,* 314 Or. 175, 836 P.2d 1345 (1992). According to the contract, the final payment of $45,000 was due thirty days after the printing press was installed. Since the printing press was installed sometime in mid-June, 1988, the claim for an account stated accrued in mid-July, 1988. Egenolf has not shown, as a matter of law, that its counterclaim for an account stated has been timely filed. Therefore, the motion of Egenolf for summary judgment as to its counterclaim for an account stated is denied.

## CONCLUSION

The motion of Egenolf for summary judgment (# 45) is granted as to the claims of Rose City for breaches of express and implied warranties and denied as to its counterclaims for an account stated and for breach of contract.