Gertrude **PEDLOW**, Plaintiff–Appellant,

v.

Dale **STAMP**, Defendant–Appellee.

No. 90CA1779.

Colorado Court of Appeals, Div. III.

Sept. 12, 1991.

Cornish and Dell'olio, Craig M. Cornish, Colorado Springs, for plaintiff-appellant.

Law Offices of Gary F. Dailey, Erika M. Boren, Colorado Springs, for defendant-appellee.

Opinion by Judge TURSI.

Plaintiff, Gertrude Pedlow, appeals from the order of the trial court awarding attorney fees and costs to defendant, Dale Stamp, pursuant to § 13–17–102, C.R.S. (1987 Repl.Vol. 6A). We reverse.

In 1983, the City of Colorado Springs entered into an agreement under which defendant was responsible for operating and staffing the municipal tennis program. In 1984, defendant offered to hire plaintiff as his administrative assistant. The written employment contract proposed by defendant provided, in part, that neither the city

nor defendant would provide workers' compensation insurance coverage for plaintiff. In response, plaintiff informed defendant that this provision conflicted with his legal obligations under the Colorado Workers' Compensation Act. When defendant refused to modify the proposed contract, plaintiff commenced this action, asserting that defendant's conduct violated the public policy underlying §§ 8–44–101(1) and 8–48–101(1), C.R.S. (1986 Repl.Vol. 3B).

Defendant filed an answer and a counterclaim which requested an award of attorney fees and costs under § 13–17–102. The complaint was dismissed on defendant's motion for summary judgment, and the trial court subsequently entered summary judgment on defendant's counterclaim for attorney fees.

On appeal, this court rejected plaintiff's assertion that her claim represented a good faith attempt to establish a new theory of law, and we therefore affirmed the trial court's order. *Pedlow v. Stamp*, 749 P.2d 969 (Colo.App.1987). That ruling was reversed in *Pedlow v. Stamp*, 776 P.2d 382 (Colo.1989), wherein our supreme court held that the trial court abused its discretion in failing to conduct a hearing on defendant's counterclaim and in failing to set forth any factual findings in support of its award.

Following the hearing on remand, the trial court again entered judgment against plaintiff on defendant's counterclaim. In its written order, the trial court made the following findings:

"It is agreed that ... Plaintiff was attempting to establish new law. The court has previously found that Plaintiff's counsel was acting in good faith and was not negligent or acting to harass, vex or delay the Defendant.

"Based upon the record in this case, the court finds the complaint to be 'substantially frivolous' based upon the absence of Colorado precedent supporting the desired establishing of new law, and in view of the existing Colorado precedent defining wide latitude in the creation of employer-employee relationships."

On appeal, plaintiff contends the trial court abused its discretion in imposing sanctions. We agree.

Section 13–17–102(7), C.R.S. (1987 Repl. Vol. 6A) provides that: "No attorney or party shall be assessed attorney fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Colorado." This provision of the statute reflects the principle that an attorney's ethical obligation zealously to represent a client permits the pursuit of a claim which is not recognized under existing law "if it can be supported by a good faith argument for an extension, modification, or reversal of existing law." *See Mission Denver Co. v. Pierson*, 674 P.2d 363 (Colo.1984).

Here, plaintiff sought to establish a public policy tort based on an employer's requirement that prospective employees waive certain rights under the Workers' Compensation Act. Such a cause of action has not been recognized in this jurisdiction, nor do we address that question here. Nonetheless, it is not unreasonable to argue that an extension of existing case law would permit a plaintiff to maintain this type of claim.

In *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo.App.1989), this court recognized that an employee had a civil tort cause of action against an employer when the employee had been discharged in retaliation for having pursued a workers' compensation claim. The availability of this type of claim was not based on the particular nature of a given employer-employee relationship, but rather on the recognition that it is a violation of this state's public policy for an employer to discourage or prevent the enjoyment of substantive rights under the Workers' Compensation Act by forcing individuals to choose between their jobs or their rights.

An identical result was reached by the Illinois Supreme Court in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Subsequently, in *Darnell v. Impact Industries, Inc.*, 105 Ill.2d 158, 85 Ill.Dec. 336, 473 N.E.2d 935

(1984), a majority of the Illinois Supreme Court applied the same public policy at issue in *Kelsay, supra,* and extended the availability of the tort to include an employee who was discharged when her employer discovered that, contrary to the statements made on her employment application, she had filed a workers' compensation claim against a previous employer. In a dissenting opinion, Justice Moran noted, "Under the reasoning of the majority, it seems clear that if plaintiff had honestly answered the . . . questions on the application at issue here, and defendant had refused to hire her on that basis, the same public policy which the majority finds offended in the case at bar would be compromised."

In our view, these decisions could serve to support an argument that employers should be liable in tort for attempting to coerce individuals to forego their statutory rights by denying them employment. Accordingly, we conclude the trial court abused its discretion in ruling that plaintiff's claim was substantially frivolous under § 13–17–102.

The order awarding attorney fees and costs is reversed.

RULAND, J., concurs.

DUBOFSKY, J., specially concurs.

Judge DUBOFSKY concurring.

I wholeheartedly concur in the result reached here; however, I write separately to discuss certain problems with our attorney fees statute that are demonstrated by this case.

As pertinent here, § 13–17–101, et seq., C.R.S. (1987 Repl.Vol. 6A), provides for an award of attorney fees when a lawsuit or claim is deemed substantially frivolous by the trial court. Prior to the enactment of this statute in 1977, Colorado closely followed the traditional American rule, and thus, in virtually all circumstances, one party to a lawsuit was not allowed to recover its legal fees from the other party.

Two of the purposes underlying the enactment of the attorney fees statute were to reduce the amount of litigation and to compensate a party against whom a frivolous claim or lawsuit had been asserted. Recently, the Bar has voiced great concern that the beneficial purposes of reducing litigation and compensating wronged parties are not being met and that rules or statutes permitting attorney fees because of frivolous claims are adversely affecting the practice of law. *See generally* Renner, *A Trial Lawyer's View of Attorney's Fees Awards,* 17 Colo.Law. 466 (1991); New York Times, Sept. 14, 1990, § B18, col. 1.

Rather than the threat of attorney fees reducing litigation, a new category of "satellite" cases, numbering in the thousands, based on "frivolous actions" has been spawned. *See* Nelken, *The Impact of Federal Rule 11 on Lawyers and Judges in the Northern District of California,* 74 J.Am. Judicature Soc'y 147 (Oct./Nov. 1990).

Furthermore, the difficulty of determining what is a frivolous claim greatly complicates the process, *see Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983); *Indianapolis Colts v. Mayor & City Council of Baltimore,* 775 F.2d 177 (7th Cir.1985), and makes compensation of the "wronged" party very uncertain.

Also, since the determination of what is a frivolous claim or lawsuit is subjective and variable, a party cannot be confident of which claims will be so classified. *See Rule 11 in the Real World,* 132 F.R.D. 309 (1990); *Analytica, Inc. v. NPD Research, Inc.;* and *Indianapolis Colts v. Mayor and City Council of Baltimore, supra.*

In addition to apparently increasing litigation, these frivolous action claims have created other problems for the litigants and their attorneys. For example, it appears that some attorneys request attorney fees on the basis the other party's claims are frivolous in virtually every case they handle. *See A Trial Lawyer's View of Attorney's Fees Awards, supra,* at 166. Thus, the allegation that a claim is frivolous has become a weapon in the arsenal of attorneys to either force favorable settlements or dismissal of claims. One study indicates that only 13.6% of requests for attorney fees because of frivolous claims were

found to be meritorious. This evidence suggests that a high percentage of claims for attorney fees are without a legitimate and substantial basis. *See Rule 11 in the Real World, supra* at 317 n. 21.

More significantly, however, is the negative impact such claims have had on the practice of law because they have increased the distrust and personal attacks of attorneys on each other. *See A Trial Lawyer's View of Attorney's Fees Awards, supra.* A claim by one attorney that another has brought a frivolous action implies that the latter attorney is acting improperly, if not unethically. This type of accusation inevitably raises the level of hostility and acrimony within the lawsuit. *See A Trial Lawyer's View of Attorney's Fees Awards, supra.* Such claims also set the client against the attorney and thereby undermine the trust that is essential to their relationship.

Thus, ironically, at a time when major segments of the legal profession desire a more streamlined and conciliatory approach to litigation, the impact of § 13–17–101 appears to be just the opposite. *See A Trial Lawyer's View of Attorney's Fees Awards, supra.*

In addition, there is the very disconcerting indication that accusations of frivolous claims and lawsuits are most often made against minorities and poor people who are asserting civil rights and related personal injury type claims. *See* Nelken, *Has the Chancellor Shot Himself in the Foot? Looking for a Middle Ground on Rule 11 Sanctions,* 41 Hastings L.J. 383 (1990); *The Rule 11 Ruckus,* 11 Calif.Law. 17 (May 1991).

An important function of the judicial system is to provide an avenue for people, who are excluded from the opportunities and benefits within the society, to obtain justice. A substantial award of attorney fees can financially destroy or bankrupt a person in a middle to lower economic class, and therefore, this threat acts as a substantial deterrent from bringing difficult but meritorious lawsuits. Statutes and rules providing attorney fees also make the litigants' experience with the legal process

more confusing and hostile, and far more expensive.

Most claims involving frivolous lawsuits arise because the offending party's facts arguably did not support the claim. Here, defendant's argument that plaintiff's claim was frivolous is not based on the absence of supporting facts, but rather on the lack of a theoretical/legal justification for the claim. There are compelling reasons to allow the liberal assertion of new and different legal theories and claims based on them. The courts should welcome, not decry, proposed new directions in the law.

The complex conflicting interests of a diverse, rapidly growing, and changing society require that new legal ideas be readily assertible so that the law can appropriately reflect the experience and needs of the society. To close the door on new legal theories will isolate the courts from appropriately responding to the factors which bear on the pending issues. *See* R. Posner, *Problems of Jurisprudence,* (Harv.Univ. Press 1990); Oliver Wendell Holmes, *The Common Law,* (1881); O.W. Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457 (1897).

When initially proposed, many legal theories appear strange and unorthodox and thus not worthy of acceptance. Over time, in the marketplace of competing legal theories, many of these "strange and unorthodox" ideas have won acceptance and become the law. As the court stated in *Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558 (E.D.N.Y.1986), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987):

> "Sometimes there are reasons to sue when one cannot win. Bad court decisions must be challenged if they are to be overruled, but the early challenges are certainly hopeless. The first attorney to challenge *Plessy v. Ferguson* was certainly bringing a frivolous action, but his efforts and the efforts of others eventually led to *Brown v. Board of Education.*"

By punishing the litigant through an adverse award of attorney fees, the courts may too readily slam the door on the liti-

gant's right to espouse new ideas and to challenge improperly decided cases. Furthermore, in closing this door, we threaten the very source of ideas which is essential for enlightened decisions that reflect the needs of the society.

For these reasons, I would adopt an interpretation of § 13–17–101, et seq., that only permits the recovery of attorney fees for bringing frivolous claims when the claim is totally meritless and the attorney/party advocating the claim maliciously persists in pursuing it after he knew or should have known it was meritless. Furthermore, the court should review a losing request for attorney fees with an eye toward awarding fees against the requesting party if a proper basis for the request is not shown. *See Ace Title Co. v. Casson Construction Co.*, 755 P.2d 457 (Colo.App. 1988).