Lewrence R. McCORMICK d/b/a McCormick Custom Homes, Plaintiff–Appellant and Cross–Appellee,

v.

Leo N. BRADLEY, Bear Creek Development Corporation, a Colorado corporation, and Bear Creek Properties Corporation, a Colorado corporation, Defendants–Appellees and Cross–Appellants.

No. 92CA1613.

Colorado Court of Appeals,
Div. B.

Nov. 4, 1993.

Rehearing Denied Dec. 2, 1993.

Certiorari Denied April 11, 1994.

Gary S. Cohen, Denver, for plaintiff-appellant and cross-appellee.

Bradley, Campbell, Carney & Madsen, Jim M. Hansen, Matthew S. McElhiney, Golden, for defendants-appellees and cross-appellants.

Opinion by Judge DAVIDSON.

Plaintiff, Lewrence McCormick, d/b/a McCormick Custom Homes, appeals from the judgment entered against him on a partial directed verdict and a jury verdict in favor of defendants, Leo N. Bradley, Bear Creek Development Corporation, and Bear Creek Properties Corporation. Defendants cross-appeal. We affirm and remand for consideration of defendants' claim for attorney fees pursuant to § 6-4-114(2), C.R.S. (1992 Repl. Vol. 2).

Plaintiff is a builder of custom houses. In early 1991, he entered into a contract with Lonnie and Christi Herbert to build a house for them on one of the 35 lots located in the South Pointe section of the Bear Creek subdivision near Golden, Colorado. The Herberts had been informed by the South Pointe sales agent that the developer had an ap-

proved builder policy and that plaintiff was not one of the approved builders.

It was undisputed that, during the period relevant here, the real estate market was in decline, and South Pointe was having difficulties getting started as a viable residential development. Originally, the developer had expected to have all 35 South Pointe lots sold with either speculation or custom homes by 1991, but at the time of trial in 1992, although the real estate market had begun to improve, 12 lots remained unsold.

According to the testimony of the South Pointe sales agent, at the time the Herberts purchased their lot, six speculation homes had been built by South Pointe approved builders. No lots had yet been sold for custom homes; a total of 29 vacant lots were available for sale. The sales agent agreed to ask the developer if it was possible to have plaintiff approved as a builder. After the sales agent informed the Herberts that plaintiff would not be approved, the Herberts chose an approved builder to construct their home and cancelled the contract with plaintiff.

Plaintiff filed suit against the developer alleging antitrust violations under Colorado law and tortious interference with contractual or prospective economic relationship. After the close of defendants' evidence, the trial court granted a directed verdict in favor of defendants on the antitrust claim. The trial court then submitted the tort claim to the jury, and it returned a verdict in favor of defendants.

Defendants then moved to alter or amend the judgment seeking attorney fees and costs. Treating this motion as a motion for an award of attorney fees and a bill of costs, the trial court denied the motion for attorney fees, and approved the bill of costs, without comment.

I.

Plaintiff first argues that the trial court erred in determining that he had not presented sufficient evidence to submit the antitrust claim to the jury. We disagree.

■ When considering a motion for directed verdict, the evidence and all legitimate inferences therefrom must be viewed in the light most favorable to the non-moving party. *Ferguson v. Gardner*, 191 Colo. 527, 554 P.2d 293 (Colo.1976); *Klein v. Sowa*, 759 P.2d 857 (Colo.App.1988).

■ A directed verdict is proper if the facts are not in conflict and are susceptible of only one reasonable interpretation and if no reasonable jury could decide the issue against the moving party. *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo.1986); *Evans v. Webster*, 832 P.2d 951 (Colo.App.1991).

According to § 6–4–104, C.R.S. (1992 Repl. Vol. 2): "Every contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce is illegal." While this broad language could potentially bar almost any business arrangement if literally construed, our supreme court has determined that the statute was meant to prohibit only those combinations which unreasonably restrain, or are designed to eradicate competition in, a specific market. *See People v. Colorado Springs Board of Realtors, Inc.*, 692 P.2d 1055 (Colo.1984).

Any person injured by a violation of the Colorado antitrust statutes may bring a civil action and recover actual damages pursuant to § 6–4–114, C.R.S. (1992 Repl.Vol. 2).

Plaintiff alleges that the approved builder policy adopted by defendant violates § 6–4–104. Specifically, he contends that because a potential buyer may not purchase the residential lot (the tying product) without also purchasing the goods and services provided by one of the approved builders (the tied product), the approved builder policy constitutes an illegal tying arrangement.

Conditioning the sale of one product on the purchase of another tends to suspend the purchaser's independent judgment as to the merits of the tied product and insulates that product from the competitive stresses of the open market. *Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). For this reason, tying arrangements are subject to rigorous examination under most state and federal antitrust laws. *See Northern Pacific Ry. Co.*

*v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958).

And, because the federal antitrust statutes serve similar purposes and seek to achieve a similar goal of protecting competition, federal antitrust opinions are entitled to careful consideration when interpreting Colorado antitrust statutes. *People v. North Avenue Furniture & Appliance, Inc.,* 645 P.2d 1291 (Colo.1982).

■ As the trial court noted, selling two products in combination is not illegal; it first must be established that this tying arrangement possesses a significant potential for restraint of competition. *See Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984); *Tic–X–Press, Inc. v. Omni Promotions Co.,* 815 F.2d 1407 (11th Cir.1987).

■ A tying arrangement may be a *per se* antitrust violation, and if so, the detrimental effect on the tied market is presumed without a detailed inquiry into actual market conditions. *International Salt Co. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

■ Under Colorado law, a tying arrangement is unreasonable *per se* only if (1) the supplier of the tying product possesses sufficient economic power with respect to that product appreciably to restrain free competition in the market for the tied product and (2) a not insubstantial amount of commerce in the tied market is affected thereby. *People v. Colorado Springs Board of Realtors, Inc., supra.* If no *per se* violation is established, the practice may nonetheless be illegal under the "rule of reason" test if the anti-competitive impact in the market for the tied product outweighs any pro-competitive effects. *People v. Colorado Springs Board of Realtors, Inc., supra; see also Jefferson Parish Hospital District No. 2 v. Hyde, supra.*

Prior to granting defendants' motion for directed verdict on the antitrust claims, the trial court found that two separate products, South Pointe lots and the goods and services provided by one of the approved builders, were tied together. The existence of two separate products is usually determined by evidence of separate consumer demand for each product. *See Virtual Maintenance, Inc. v. Prime Computer, Inc.,* 957 F.2d 1318 (6th Cir.1992) *modified on other grounds,* 995 F.2d 1324 (6th Cir.1993). The parties seem to be in agreement that separate consumer demand exists for the two products here, and we conduct our analysis accordingly.

The parties also seem to agree that the fact that the two products here are sold by two separate sellers does not preclude plaintiff's *per se* antitrust claim. We note that there is authority to suggest that when two products are sold together by two separate sellers, a *per se* analysis will pertain only if the two sellers share in the profits derived from the sale of the packaged items. *See generally Gonzalez v. St. Margaret's House Housing Development Fund Corp.,* 880 F.2d 1514 (2d Cir.1989) (economic interest factor discussion). However, from the evidence presented at trial it is unclear whether profits were shared by the two sellers, and this issue was neither raised nor addressed by the parties or the trial court. Thus, we will assume, as do the parties, that a *per se* analysis is not precluded here.

### A.

Plaintiff first contends that he presented sufficient evidence to create a jury question as to whether defendants' approved builder policy was a *per se* antitrust violation. We disagree.

### 1.

■ Under the first part of the *per se* violation analysis, a plaintiff must prove that the seller possesses economic power in the relevant market. Economic power, in antitrust terms, means that a single seller possesses the ability to raise prices and restrict output for the product in the relevant market. *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

■ This requisite economic power can be established by showing that the tying product is unavailable elsewhere or is particularly

unique and desirable or, alternatively, that the defendant occupies a dominant position in the tying market. *See Fortner Enterprises, Inc. v. United States Steel Corp., supra; United States v. Loew's, Inc.*, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962).

Thus, if the seller offers a unique product, the proper focus of concern is whether the uniqueness of the product gives the seller the power to raise prices or impose other burdensome terms, such as accepting a tied product, with respect to any appreciable number of buyers within the market. *Fortner Enterprises, Inc. v. United States Steel Corp., supra.*

Factual uniqueness alone is not adequate. If the seller's unique product does not confer some significant economic marketing advantage or is not significantly differentiated from what other sellers could offer if they so chose, and therefore competitors are able to offer a comparable product at a comparable price even if they have not done so, then there is no economic power. *United States Steel Corp. v. Fortner Enterprises, Inc.*, 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977); *Virtual Maintenance, Inc. v. Prime Computer, Inc., supra; Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir.1984).

Here, the Herberts agreed to use the goods and services provided by one of the approved builders only because the South Pointe lot was, in their view, uniquely suited for their needs and they could not purchase that lot unless they agreed to use an approved builder. Plaintiff's primary contention, both at trial and on appeal, is that this particular piece of land was such a unique and otherwise unavailable product that defendants, by virtue of mere possession of the lot, also possessed the requisite economic power.

We do agree that rarely, if ever, would a potential purchaser find that any two pieces of real property were identical. *See Denver Urban Renewal Authority v. Berglund–Cherne Co.*, 193 Colo. 562, 568 P.2d 478 (1977). Any particular piece of real estate is therefore, in that sense, unique and impossible of precise duplication. *Benson v. Nelson,* 725 P.2d 71 (Colo.App.1986); *see also Prosser v. Schmidt*, 118 Colo. 502, 197 P.2d 318 (1948).

Contrary to plaintiff's contentions, however, the fact that a product is "unique," in the sense of "without like or equal," does not in and of itself, confer economic power. *See Spartan Grain & Mill Co. v. Ayers,* 581 F.2d 419 (5th Cir.1978). The burden is on the antitrust plaintiff to show that no competitor could have offered a comparable product. *3 P.M., Inc. v. Basic Four Corp.*, 591 F.Supp. 1350 (E.D.Mich.1984). *Compare International Salt Co. v. United States, supra* (the tying product, a salt dispensing machine, was unique because the seller's patent prevented others from selling comparable machines) *and United States v. Loew's, Inc., supra* (the copyright attached to seller's product, feature films for television, prevented others from selling comparable films) *with 3 P.M., Inc. v. Basic Four Corp., supra* (trademark and partial copyright attached to seller's product, business computer systems, did not conclusively demonstrate that others could not have produced a comparable product). Further, the fact that a particular customer prefers a particular tying product is not necessarily probative of significant economic power. *See Jefferson Parish Hospital District No. 2 v. Hyde, supra.*

Land has been recognized as a "unique" product in antitrust cases, *see Northern Pacific Ry. Co. v. United States, supra; State v. Hossan–Maxwell, Inc.*, 181 Conn. 655, 436 A.2d 284 (1980). In the majority of cases cited by plaintiff, however, the "uniqueness" of the land did not, *ipso facto,* establish economic power but instead was considered in conjunction with other considerations, including objective criteria of desirability, in defining what was the relevant market. *See Suburban Mobile Homes, Inc. v. Amfac Communities, Inc.*, 101 Cal.App.3d 532, 161 Cal. Rptr. 811 (1980) (the highly desirable locations within commuting distance of San Francisco and the unique amenities of certain mobile home lots constituted economic power in the market for such lots); *MacManus v. A.E. Realty Partners*, 146 Cal.App.3d 275, 194 Cal.Rptr. 567 (1983) (the desirable

characteristics of the defendant's homes coupled with a general scarcity of available homes supported an allegation of economic power within the residential real estate market); *Northern Pacific Ry. Co. v. United States, supra* (Northern Pacific's vast holdings of land situated in desirable locations adjacent to the railroad tracks conferred sufficient economic power in the relevant market).

Plaintiff relies upon *State v. Hossan–Maxwell, Inc., supra,* in which the Connecticut Supreme Court concluded, without discussion, that the uniqueness of residential property was sufficient evidence of market power. In that case, the court first announced that the pertinent inquiry was whether the seller had the power to force a tying arrangement upon any appreciable number of buyers within the market for the tying product, but then neglected to explain how the uniqueness of residential lots, without more, bestowed this ability upon the seller. We decline to reach the same conclusion concerning defendants' lots here without, at the minimum, evidence that defendants' lots possessed unique and desirable attributes, attractive to other buyers in addition to the Herberts, which prevented other sellers from offering a comparable product. *See 3 P.M., Inc. v. Basic Four Corp., supra,* and *compare State v. Hossan–Maxwell, Inc., supra,* with *Northern Pacific Ry. Co. v. United States, supra.*

Moreover, what is absent from the *Hossan–Maxwell* analysis is the recognition of the fundamental concept that any inquiry into the validity of a tying arrangement, even when a unique product is involved, must focus on the markets in which the products are sold. *See Jefferson Parish Hospital District No. 2 v. Hyde, supra; cf. United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956) (products need not be fungible to be considered in the relevant market; that market is composed of products which are reasonably interchangeable for the purposes for which they are offered).

This market power analysis has both a product and a geographic dimension that, once defined, provide the framework against which economic power may be measured.

*Virtual Maintenance, Inc. v. Prime Computer, Inc., supra.* Accordingly, the analysis of defendant's power within the tying market necessarily required plaintiff to define precisely the market for vacant residential lots. *See People v. Colorado Springs Board of Realtors, Inc., supra.*

Plaintiff, however, presented no evidence establishing the relevant market. Therefore, no reasonable fact finder could conclude that the uniqueness of the custom home lot creates sufficient economic power in the relevant market for the tying product.

We reject the notion urged by plaintiff that the relevant market consists of a single lot which a single purchaser has selected. The impact on competition of a single forced sale of a tied product to a single customer is never sufficient to warrant a finding of market power over the tying product. *Jefferson Parish Hospital District No. 2 v. Hyde, supra; Ryko Manufacturing Co. v. Eden Services,* 823 F.2d 1215 (8th Cir. 1987); *W.H. Brady Co. v. Lem Products, Inc.,* 659 F.Supp. 1355 (N.D.Ill.1987).

The facts of this case aptly illustrate the soundness of this principle; by proving merely that one purchaser found the South Pointe lot subjectively more desirable than others they had seen, plaintiff did not show that defendants had economic power within the relevant market of residential lots available to all potential buyers. *See United States Steel Corp. v. Fortner Enterprises, Inc., supra; Kingsport Motors, Inc. v. Chrysler Motors Corp.,* 644 F.2d 566 (6th Cir.1981).

To have established the requisite economic power, plaintiff needed to show that because of this power in the tying market, defendants had the ability to impose a burden, here the purchase of the tied product, upon an appreciable number of buyers in the relevant geographic area that defendants could not have affected in a competitive market. *See* II E. Kintner, *Federal Antitrust Law* 238 (1980). Taken by itself the evidence of the forced sale to the Herberts did not demonstrate that the unique characteristics of the South Pointe lots made the package offered by defendants sufficiently more advantageous than that offered by other sellers to confer

any economic power within the relevant market. *See Will v. Comprehensive Accounting Corp.*, 776 F.2d 665 (7th Cir.1985).

### 2.

 As noted above, economic power may also be established by showing that the seller occupies a dominant position in the relevant market. Plaintiff failed to demonstrate that defendants controlled even a significant portion of the relevant market here.

Assuming that plaintiff meant to define the relevant market as including the Denver metropolitan area, defendants presented evidence that, at the time the Herberts were looking for a custom home lot on which to build, at least 1419 comparable lots, in terms of desirability of location, price range, and other considerations, were available. Thus, it was undisputed that the South Pointe lots represent less than 3% of the total number available in the area.

This was the only evidence presented tending to define the relevant market. By failing to present evidence of his own to define the relevant market, plaintiff lost any opportunity to show that defendants' conception of the relevant market was incorrect.

As so defined, 3% of the available vacant custom home lots in the area does not constitute significant economic power in the market for such lots. *See United States Steel Corp. v. Fortner Enterprises, Inc., supra; United States v. E.I. du Pont de Nemours & Co., supra* (although each seller possesses a monopoly with respect to the seller's own individual product, the measure of market dominance must take into account similar substitute products); *Jefferson Parish Hospital District No. 2 v. Hyde, supra* (30% market share insufficient); *Virtual Maintenance, Inc. v. Prime Computer, Inc., supra* (11% market share insufficient); *Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792 (1st Cir.1988) (5.6% market share insufficient); *A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673 (6th Cir.1986) (2–4% market share insufficient).

We therefore agree that no reasonable fact finder could have concluded that defendant had the requisite economic power in the relevant market for the tying product.

### B.

 Plaintiff's proof also suffered a similar deficiency as to whether a substantial amount of commerce within the tied market had been foreclosed. The critical figure for purposes of this analysis is the percentage of sales of the tied product that was foreclosed by the tying arrangement. *Fortner Enterprises, Inc. v. United States Steel Corp., supra.*

However, plaintiff made no effort to define the market for the tied product—the goods and services provided by custom home builders in the relevant geographic area. It was plaintiff's burden to establish that a not insubstantial amount of these sales were foreclosed by defendants' policy, but plaintiff presented evidence of only one out of an unknown number of total sales which was foreclosed from competition.

While we agree with plaintiff that the dollar amount of the Herbert contract is not insignificant or paltry, *see Fortner Enterprises, Inc. v. United States Steel Corp., supra*, we do not agree that this is the relevant figure for the purpose of proving a not insubstantial amount of commerce has been foreclosed. *See Aspen Title & Escrow, Inc. v. Jeld–Wen, Inc.*, 677 F.Supp. 1477 (D.Or. 1987); *Metromedia Broadcasting Corp. v. MGM/UA Entertainment Co.*, 611 F.Supp. 415 (C.D.Cal.1985); *cf. Tic–X–Press, Inc. v. Omni Promotions Co., supra* (although the evidence presented dealt with a single purchaser, the fact that this purchaser was involved in a total of seven forced transactions was sufficient to show a substantial impact on the market). Therefore, we agree with the trial court that no reasonable fact finder could conclude that plaintiff had established a *per se* antitrust violation. *See People v. Colorado Springs Board of Realtors, Inc., supra.*

### II.

 Plaintiff next argues that, even if no *per se* antitrust violation could be established, the trial court was required to submit

the claim to the jury for consideration of the "rule of reason" test. We disagree.

■■■■ To prevail in the absence of a *per se* violation, a plaintiff bears the burden of demonstrating that the tying arrangement unreasonably restrains competition and must necessarily explain to the fact finder what the actual effect on competition in the relevant market has been. *Jefferson Parish Hospital District No. 2 v. Hyde, supra.* Only if the actual anti-competitive impact of the tying arrangement on the market for the tied product outweighs any pro-competitive effects may the practice be found to be an antitrust violation. *People v. Colorado Springs Board of Realtors, Inc., supra.*

Plaintiff did not define the market for the tied product by product or by geography, *see Virtual Maintenance, Inc. v. Prime Computer, Inc., supra,* and he presented no evidence of any impact on that market. Because of this lack of definition of the relevant market, it cannot be presumed that defendants' policy had anti-competitive effects, other than plaintiff's loss of the Herbert contract which he contends would not have occurred if the market were unrestrained by defendants' policy. *See People v. Colorado Springs Board of Realtors, Inc., supra.*

Therefore, we agree with the trial court's conclusion that no reasonable fact finder could determine that the pro-competitive effects of the approved builder policy were outweighed by anti-competitive impact. Hence, the directed verdict in favor of defendants was not erroneous. *See Candell v. Western Federal Savings & Loan Ass'n,* 156 Colo. 552, 400 P.2d 909 (1965).

### III.

■■■ Plaintiff also argues that the trial court erroneously awarded defendants photocopying costs in the amount of $950.95. We disagree.

Plaintiff rejected defendants' offer of settlement pursuant to § 13–17–202, C.R.S. (1993 Cum.Supp.). Because plaintiff did not recover a judgment in excess of that offer of settlement, defendants were entitled to an award of actual costs. *See Callaham v. First American Title Insurance Co.,* 837 P.2d 769 (Colo.App.1992); § 13–17–202(1)(a)(II), C.R.S. (1993 Cum.Supp.).

The trial court has no discretion to deny an award of actual costs under this statute, so long as it determines that those costs are reasonable. *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993); *Jorgensen v. Heinz,* 847 P.2d 181 (Colo.App.1992).

Moreover, contrary to plaintiff's assertion that photocopying costs may not be awarded as reasonable costs, § 13–16–122(1)(f) C.R.S. (1987 Repl.Vol. 6A) authorizes the award of fees for "copies of papers necessarily obtained for use in the case." *See Cherry Creek School District # 5 v. Voelker,* 859 P.2d 805 (Colo.1993) (the list of items which may be awarded as costs in § 13–16–122(1) is meant to be illustrative and not exclusive); *Perkins v. Flatiron Structures Co.,* 849 P.2d 832, (Colo.App.1992).

Here, plaintiff does not contend that the photocopies were not necessary for use in this case or that the costs were unreasonable. Thus, we conclude that the trial court was well within its discretion to award photocopying costs.

### IV.

Because of our resolution of the antitrust issues, we need not address plaintiff's remaining contention that the improper directed verdict prejudiced the jury as to his claim for tortious interference with contract.

### V.

On cross-appeal, defendants argue that because plaintiff's claims were groundless, frivolous, and vexatious, they were entitled to an award of attorney fees under § 13–17–102, C.R.S. (1987 Repl.Vol. 6A). Defendants also argue that they are entitled to an award of attorney fees as the prevailing party pursuant to § 6–4–114(2), C.R.S. (1992 Repl.Vol. 2). We agree that a remand is necessary on the issue of attorney fees.

### A.

■■■ A losing position does not necessarily justify an award of attorney fees under § 13–17–102. *See Romberg v. Slemon,* 778

P.2d 315 (Colo.App.1989); *Federal Land Bank v. Jost,* 761 P.2d 270 (Colo.App.1988). Attorney fees may not be awarded if, as here, a plaintiff makes a good faith presentation of an arguably meritorious legal theory upon which no determinative authority in Colorado exists. *See SaBell's, Inc. v. City of Golden,* 832 P.2d 974 (Colo.App.1991); *Pedlow v. Stamp,* 819 P.2d 1110 (Colo.App.1991).

We conclude that the trial court did not err by refusing to award attorney fees on this basis. We also decline to award attorney fees incurred in defending this appeal. *See Mission Denver Co. v. Pierson,* 674 P.2d 363 (Colo.1984).

### B.

As to defendants' request for an award of attorney fees under § 6–4–114(2) of the Colorado antitrust statute, an amended version came into effect on July 1, 1992, several weeks before the trial of this matter. Plaintiff requested permission to supplement his complaint before trial to include remedy provisions included in the new version of the statute. Plaintiff contended, and the trial court agreed, that the new version of the statute should be applicable to this action prospectively under *Billington v. Yust,* 789 P.2d 196 (Colo.App.1989). Accordingly, defendants then requested that the trial court award them their attorney fees incurred after the effective date of the amendments to § 6–4–114(2).

By its terms, an award of attorney fees to the prevailing party under § 6–4–114(2) is discretionary with the trial court. We recognize that unlike, for example, § 14–10–119, C.R.S. (1987 Repl.Vol. 6B), there are no specific guidelines to assist the court in the exercise of its discretion. Certainly, there are many reasons why a court may choose to grant or not to grant attorney fees, such as disparity of income. Here, however, although defendants prevailed on the merits on all claims, the trial court denied defendants' request for attorney fees without comment. And, we cannot ascertain from a review of the record what factors, if any, it relied upon in exercising its discretion. Thus, we must remand the cause to the trial court to delineate the basis for its ruling concerning defen-

dants' request for attorney fees under § 6–4–114(2) as the prevailing party both in the trial court and on appeal. *Cf. Cherry Creek School District # 5 v. Voelker, supra.*

### VI.

Defendants also argue that the trial court erred by denying their motion for directed verdict on plaintiff's tortious interference with contract claim. In view of the jury verdict rendered in their favor, and the disposition of this appeal, it is not necessary to address this issue.

The cause is remanded on the issue of defendants' request for attorney fees under § 6–4–114(2), and the judgment is affirmed in all other respects.

HUME and BRIGGS, JJ., concur.