ROBERT A. VANDE GUCHTE, M.D., APPELLANT, V. GARY KORT AND HERITAGE BUILDERS, INC., APPELLEES.

703 N.W.2d 611

Filed September 6, 2005.    No. A-04-777.

876

Terry R. Wittler and Kevin J. Schneider, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Gregory D. Barton, of Harding, Shultz & Downs, for appellees.

IRWIN, SIEVERS, and CASSEL, Judges.

SIEVERS, Judge.

## I. INTRODUCTION

This appeal addresses a covenant that requires a lot owner to contract with a particular homebuilder and grants the builder an option to purchase the land, at the price originally paid by the lot owner, if the lot owner does not contract with the homebuilder to construct a residence on the lot within a specified timeframe. Robert A. Vande Guchte, M.D., the lot owner, appeals the decision of the Lancaster County District Court dismissing his complaint against Heritage Builders, Inc. (Heritage), and Gary Kort (collectively the defendants), granting the defendants' motion for summary judgment, and ordering Vande Guchte to specifically perform according to the terms listed in the court's May 21, 2004, supplemental order.

## II. FACTUAL BACKGROUND

On August 27, 1997, W.G.M., Inc., and Heritage entered into an agreement in which Heritage agreed to "provide advice, consultation, suggestions and recommendations to W[.]G[.]M[.] regarding the development of, and final plat for," a residential development at Firethorn Golf Course in Lincoln, Nebraska. In exchange for Heritage's services, W.G.M. appointed Heritage as the "exclusive builder" of all homes on lots sold by W.G.M. (except Lot 5) within 2 years of the issuance of the final plat and on all townhome lots sold by W.G.M. within 7 years of the issuance of the final plat. W.G.M. also granted Heritage a non-exclusive option to purchase any lot in the development for the initial price per lot as set forth on exhibit A to the agreement. We note that Lot 5 was exempt from both the exclusive builder and the option provisions. A notice of the August 27 agreement was recorded with the Lancaster County register of deeds in September 1997.

On June 29, 1998, Heritage and W.G.M. entered into an "Extension and Modification Agreement" which provided that the termination date of the August 1997 agreement was extended from April 1, 1998, to February 1, 1999, and that all terms of such agreement that were not modified were renewed. The June 1998 agreement also provided that exhibit D, a purchase agreement attached to the June agreement, was to be used for the sale of each of the lots during the period of Heritage's exclusivity. Exhibit D included paragraph 1.7, which stated:

> Buyer acknowledges that Heritage . . . is the exclusive builder of any residential home or townhome to be constructed on the Property. Effective immediately upon Closing, Buyer hereby grants Heritage the exclusive option to purchase the Property in the event Buyer fails for any reason within four (4) years from Closing to enter into an unconditional building contract with Heritage for the construction of a residential home or townhome on the Property. This option may be exercised by Heritage any time four (4) years after Closing but prior to five (5) years after Closing by delivering to Buyer two copies of a purchase agreement in the form attached hereto and marked as Exhibit 2 which are duly executed and completed by Heritage. Upon receipt thereof, Buyer shall execute the tendered copies and return one such copy to Heritage within five (5) business days after receipt. In the event Heritage does not exercise the option in accordance with this Section, this option shall be of no further force and effect. In the event Buyer fails or refuses to execute and deliver the purchase agreements following execution and delivery by Heritage, Buyer shall be deemed to be bound by the terms and conditions of the purchase agreement, notwithstanding such failure or refusal to execute and deliver so long as Heritage has fully complied with the terms of this section.

On September 18, 1998, Vande Guchte entered into a purchase agreement, identical to exhibit D, with W.G.M. to purchase for $145,000 the property described as "Lot 2, Block 1" (hereinafter the lot) in the aforementioned development. The purhase agreement contained paragraph 1.7 as recited above. Additionally, Vande Guchte signed a "Notice" that Heritage had

been appointed the exclusive builder and "ha[d] been granted an exclusive option to purchase [the lot] for a period of five (5) years from and after" the date of the Notice—September 18, 1998. The purchase agreement is clear, however, that the option can be exercised only between the fourth and fifth years after the closing, which occurred October 5, 1998. The Notice also provided that the restrictions and option "run with [the] real estate" and are "binding upon all grantees, lessees, lien holders and assignees and any subsequent interest in such property." Vande Guchte's Notice was filed with the register of deeds on October 7.

On April 1, 2002, Vande Guchte listed the lot for sale with a realty company. On April 24, with one Realtor acting as a dual agent for both parties, Gary Hoffman entered into a purchase agreement with Vande Guchte to purchase the lot for $195,000. At such time, Vande Guchte had not entered into any agreement with Heritage to build a home on the lot and the lot was still undeveloped. The closing for the lot, scheduled to occur on August 2, did not take place. Hoffman had attempted to secure financing for the lot through Pinnacle Bank. However, Pinnacle Bank denied the financing request because of an "UNRESOLVED TITLE ISSUE - RELEASE OF NOTICE FOR OPTION TO PURCHASE BY HERITAGE." Hoffman testified in his deposition that "the title company came back that there was not a clear title, and really the deal essentially went pretty south after that." Hoffman further testified, "[O]nce it came up that there was a defect in the title, that put the brakes on everything, really."

On January 7, 2003, Heritage delivered a purchase agreement dated January 6, 2003, to Vande Guchte in accordance with Heritage's option to buy the lot as stated in paragraph 1.7 of the September 1998 purchase agreement, because Vande Guchte had not entered into a contract with Heritage to build a home within 4 years of purchase of the lot. Heritage stated in a letter to Vande Guchte that it was ready, willing, and able to close under the terms and conditions of the purchase agreement. Vande Guchte refused to participate in the closing with Heritage, scheduled to occur February 5.

### III. PROCEDURAL BACKGROUND

Vande Guchte filed a complaint in the Lancaster County District Court on January 23, 2003, alleging that Heritage's

option in paragraph 1.7 of the purchase agreement was "void and unenforceable" and that the defendants "intentionally and unjustifiably interfered with Vande Guchte's contractual arrangement with Hoffman." Also on January 23, Vande Guchte filed a complaint in the Lancaster County District Court against Hoffman, alleging that Hoffman breached the purchase agreement. The district court's decision in that lawsuit is on appeal to this court as *Vande Guchte v. Hoffman*, No. A-03-1345, 2005 WL 2129101 (Neb. App. Sept. 6, 2005) (not designated for permanent publication), which appeal we decide this same day, but by a separate opinion.

Heritage filed an answer and counterclaim, alleging that its option to purchase is valid and enforceable and requesting that the court order Vande Guchte to specifically perform the terms and conditions of the January 2003 purchase agreement. The defendants then filed a summary judgment motion alleging that there were no genuine issues of material fact. Vande Guchte filed a motion to consolidate the two lawsuits or to continue the summary judgment hearing until a ruling in the Hoffman case could be entered. However, such motion was overruled. On December 15, 2003, following a summary judgment hearing, the district court granted the summary judgment motion "in its entirety," dismissed Vande Guchte's complaint, and ordered Vande Guchte to specifically perform "according to the terms of the January 6, 2003 Purchase Agreement."

Vande Guchte timely appealed to this court the December 15, 2003, order. However, we dismissed the appeal for lack of jurisdiction, because the district court's order directing Vande Guchte to transfer the lot's title by specifically performing according to the January 6, 2003, purchase agreement did not comply with the requirements for a final, appealable order for specific performance. See *Vande Guchte v. Kort*, 12 Neb. App. lxxvi (No. A-04-100, Mar. 12, 2004). We remanded the cause to the district court for entry of a final, appealable order in accordance with *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994). On May 21, 2004, the district court entered a "Supplemental Order of Specific Performance," as we mandated, and Vande Guchte then perfected this appeal.

## IV. ASSIGNMENTS OF ERROR

Vande Guchte asserts that the trial court erred in (1) not finding that the option contract was an unlawful penalty, an unlawful restraint on alienation, and an unlawful tying arrangement; (2) concluding that the defendants had not intentionally interfered with Vande Guchte's contract with Hoffman; and (3) ordering specific performance.

## V. STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Nebraska Hosp. Assn. Char. Found. v. C & J Part.*, 268 Neb. 252, 682 N.W.2d 248 (2004).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Nebraska Hosp. Assn. Char. Found. v. C & J Part., supra; Snowdon Farms v. Jones*, 8 Neb. App. 445, 595 N.W.2d 270 (1999).

■ An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Langemeier v. Urwiler Oil & Fertilizer*, 265 Neb. 827, 660 N.W.2d 487 (2003); *Snowdon Farms v. Jones, supra.*

## VI. ANALYSIS

### 1. GENERAL PRINCIPLE OF SUMMARY JUDGMENT

■ A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Russell v. Bridgens*, 264 Neb. 217, 647 N.W.2d 56 (2002). Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.*

## 2. Specific Performance

Vande Guchte alleged in his complaint that the option contract was "invalid and unenforceable." He now contends that the court erred in granting specific performance on the option contract, particularly because the option is an unlawful penalty, an unreasonable restraint on alienation, and an unlawful tying arrangement in violation of the antitrust laws. We address each of these contentions in turn.

### (a) Unlawful Penalty

■ The defendants' brief asserts that Vande Guchte's claim that the option constituted an unenforceable or unlawful penalty was not raised in his pleadings, nor ruled upon by the district court. The defendants argue that therefore, Vande Guchte is precluded from raising such issue here. The primary purpose of the summary judgment procedure is to pierce the allegations made in the pleadings and show conclusively that the controlling facts are other than as pled. *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002).

■ Because this action was filed on January 23, 2003, it is governed by the new rules for notice pleading, which apply to all "civil actions filed on or after January 1, 2003." See Neb. Ct. R. of Pldg. in Civ. Actions 1 (rev. 2004). In *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 559, 501 N.W.2d 281, 287 (1993), the Nebraska Supreme Court stated, prior to adopting notice pleading, that

> [n]otice pleading requires only that a party set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2). A litigant is not required to state a cause of action, but must simply give the opposing party sufficient notice of the claim so as to be able to prepare to meet it. [Jack H.] Friedenthal [et al., Civil Procedure] § 5.7 [(1985)]. Although a pleader in notice pleading is required to refer to circumstances and events upon which the claim is based, the pleader is not required to allege a specific fact to cover every substantive element of the claim. *Id.*

The federal rules were designed to liberalize pleading requirements, see *Weeder v. Central Comm. College*, 269 Neb. 114, 691

N.W.2d 508 (2005), and it follows that Nebraska's pleading practices have now also been liberalized. See *Anderson v. Wells Fargo Fin. Accept.*, 269 Neb. 595, 694 N.W.2d 625 (2005) (complaint should be liberally construed in plaintiff's favor and should not be dismissed merely because it does not precisely state all elements that give rise to legal basis for recovery).

■ Vande Guchte's complaint states that the option is "void and unenforceable . . . for, but not limited to, the following reasons": the option lacks independent consideration and it is an unreasonable restraint on alienation. A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case. *Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985). The broad allegation that the option is void and unenforceable is sufficient to put the defendants on notice that the option may be void and unenforceable for reasons other than those specifically stated in the petition, including that it is an unlawful penalty. However, we note that Vande Guchte did not raise or argue in the district court the theory that the option was an unlawful penalty, nor did the district court address this issue. The district court cannot err in failing to decide an issue not raised, and we will not consider the issue for the first time on appeal. See *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004) (appellate court will not consider issue on appeal that was not presented to or passed upon by trial court). In passing, we suggest that this long-established rule of appellate practice take on greater significance now that we have notice pleading, which makes the specifics of a complaint or answer less important. But, to gain appellate review of an issue or theory, it must be presented to the trial court. In this way, litigants have some assurance that appellate review will be essentially limited to the case which was tried and presented in the lower court.

### (b) Unlawful Restraint on Alienation

■ Vande Guchte asserts that the trial court erred in not concluding that the option contract was an unlawful restraint on alienation because the contract "severely restrict[ed] his ability to sell the lot and thus constitute[d] an unreasonable restraint on alienation." Brief for appellant at 19. The district court, relying

on *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980), found that "no Nebraska court has 'seriously suggest[ed] that such restrictions [exclusive builder with repurchase option rights] are invalid simply because they may affect the ease with which one may dispose of one's property.' " *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. at 473, 293 N.W.2d at 845, noted that not every impediment to the sale of property is a restraint on alienation:

It is a fact that zoning restrictions, building restrictions, or public improvements may impede the sale and substantially affect the ability of an owner to realize a maximum price. Yet no one suggests that such restrictions or covenants, as a class, are invalid simply because they affect the ease with which one may dispose of one's property.

■ The court in *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. at 472, 293 N.W.2d at 845 (quoting Restatement of Property § 404 (1944)), defined restraint on alienation as follows:

"(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance

"(a) to be void; or

"(b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or

"(c) to terminate or subject to termination all or a part of the property interest conveyed.

"(2) If a restraint on alienation is of the type described in Subsection (1), Clause (a), it is a disabling restraint.

"(3) If a restraint on alienation is of the type described in Subsection (1), Clause (b), it is a promissory restraint.

"(4) If a restraint on alienation is of the type described in Subsection (1), Clause (c), it is a forfeiture restraint."

Here, Vande Guchte argues that the exclusive builder contract "substantially impaired" his ability to sell the lot and that Heritage's option became an impediment to closing the sale with Hoffman. Brief for appellant at 21. However, the exclusive builder and purchase option rights granted to Heritage do not bring about any of the effects noted in the various subparts of the

aforementioned definition of restraint on alienation. The option did not preclude Vande Guchte from conveying the lot, he was free to convey it without legal restraint, and a conveyance would not cause a forfeiture of title. Therefore, the option was not a direct restraint on alienation.

Nor was it an indirect practical restraint on alienation. An indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003). The court in *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. 469, 474, 293 N.W.2d 843, 846 (1980), explained that some covenants may impair marketability but are neither direct nor indirect restraints, stating, "As an example, a covenant in a deed that requires the dedication of property solely to residential purposes is not a restraint on alienation even if the owner could sell the property at a higher price for commercial purposes." Clearly, a restriction that a specific builder be used falls in the same category.

Here, because the option could only be exercised "by Heritage any time four (4) years after Closing but prior to five (5) years after Closing" if there was no contract to build, as stated in the purchase agreement, Vande Guchte could have sold the lot anytime before the 4 years expired. There was no positive restriction in the purchase agreement against Vande Guchte's selling the lot. In fact, the purchase agreement contemplated the possibility of a sale because it provided that the exclusive option would run with the real estate. As a practical matter, an attempted sale too close in time to Heritage's 1-year option could affect the sale price or the ability to complete a sale, but Vande Guchte still had both the legal and practical ability to alienate his interest in the property. As stated in *Spanish Oaks v. Hy-Vee*, 265 Neb. at 142, 655 N.W.2d at 399, "[t]his situation does not resemble a restraint on alienation of the kind that courts have generally refused to uphold and enforce." The *Spanish Oaks* court determined that a use restriction in a sublease that permitted the sublet premises to be used for retail purposes so long as such purposes did not include a mass-merchandise or discount store operation similar to Wal-Mart, Kmart, Target, grocery stores, or stores engaged

primarily in the consumer sale of pharmaceuticals was not a restraint on alienation, because "[d]espite a possible reduction in market price, [the seller] still ha[d] both the legal and practical ability to alienate its interest in the property." *Id.* In conclusion, in the instant case, Vande Guchte's argument that the option was a restraint on alienation is without merit.

### (c) Unlawful Tying Arrangement

Vande Guchte asserts that using Heritage as an exclusive builder was a prohibited tying arrangement under Neb. Rev. Stat. § 59-801 et seq. (Reissue 2004)—"Unlawful Restraint of Trade." Section 59-801 is essentially identical to § 1 of the Sherman Act, 15 U.S.C. § 1 et seq. (2000), which also involves a tying arrangement. See *Heath Consultants v. Precision Instruments*, 247 Neb. 267, 527 N.W.2d 596 (1995).

In *Heath Consultants v. Precision Instruments*, 247 Neb. at 272, 527 N.W.2d at 602, the Nebraska Supreme Court found that a tying arrangement is "an agreement by a party to sell one product, but only on the condition that the buyer also purchase a different, or tied, product, or at least agree that it will not purchase that product from another supplier." A plaintiff alleging an unlawful tying arrangement must produce some evidence of the following elements: (1) the existence of two distinct products or services; (2) sufficient economic power on the part of the defendant in the tying market to appreciably restrain competition in the tied product market, combined with the exercise of such power to coerce the purchaser to buy both items; and (3) that the amount of commerce affected is not insubstantial. *Heath Consultants v. Precision Instruments, supra.*

Neither party contends that the first element for an unlawful tying arrangement—that there must be some evidence of two distinct products or services—is not satisfied here. Therefore, we turn to the second element, that the seller possess appreciable economic power in the relevant market. " 'Appreciable economic power' in the tying market concerns market power, which is the power 'to force a purchaser to do something that he would not do in a competitive market.' " *Heath Consultants v. Precision Instruments*, 247 Neb. at 275, 527 N.W.2d at 603, quoting *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 104 S.

Ct. 1551, 80 L. Ed. 2d 2 (1984). Market power can be established by showing that the tied product is unavailable elsewhere or is particularly unique and desirable, or that the seller occupies a dominant position in the relevant market. See, *Fortner Enterprises v. U. S. Steel*, 394 U.S. 495, 89 S. Ct. 1252, 22 L. Ed. 2d 495 (1969); *Baxley-DeLamar Monuments v. American Cemetery*, 938 F.2d 846 (8th Cir. 1991). The relevant market is defined in terms of product market and geographic market—the geographic area in which the defendant faces competition and to which consumers may turn for alternative sources of the product. *Baxley-DeLamar Monuments v. American Cemetery, supra.*

Here, Vande Guchte presented no evidence that W.G.M. (the seller of the lot) occupied a dominant position in the relevant market—of which there was also no evidence. See *McCormick v. Bradley*, 870 P.2d 599 (Colo. App. 1993) (analysis of market power necessarily requires plaintiff to define precisely market for residential lots when plaintiff claims that policy that buyer may not purchase residential lot without also purchasing goods and services provided by approved builder is illegal tying arrangement). Vande Guchte did not show that similarly situated lots, without Heritage as the builder, were unavailable elsewhere in the relevant market, whether that market be considered as all of Lincoln, only a certain area of Lincoln, or even Lancaster County.

Additionally, we do not accept the notion that the "uniqueness" of land by itself establishes economic power. See *McCormick v. Bradley, supra.* "The burden is on the antitrust plaintiff to show that no competitor could have offered a comparable product." *Id.* at 604. Thus, there must be some showing that the lot possessed unique and desirable attributes that were attractive to other buyers in addition to Vande Guchte, which attributes prevented other sellers from offering a comparable product. See *id.* See, also, *Baxley-DeLamar Monuments v. American Cemetery, supra.*

Because there is no such showing, Vande Guchte has failed to establish his burden of proof for an unlawful tying arrangement. Moreover, a single forced sale of a tied product to a single customer is not sufficient to warrant a finding of market power. *Jefferson Parish Hospital Dist. No. 2 v. Hyde, supra*; *McCormick v. Bradley, supra.* Consequently, due to the lack of

evidence showing a tying arrangement, there was no issue of material fact as to the defense that the exclusive builder provision was unlawful and voided the contract. Vande Guchte's argument is without merit.

### (d) General Claim of Specific Performance

Vande Guchte's third assignment of error is that the court erred in granting specific performance. However, his argument on such point is solely limited to the option's being an unlawful penalty, an unreasonable restraint on alienation, and an unlawful tying arrangement. There is no separate argument in his brief as to his third assignment of error—"The trial court erred in ordering specific performance." Because we do not find that Heritage's option under the purchase agreement was invalid or unenforceable for any of the reasons Vande Guchte relies upon—unlawful penalty, restraint on alienation, and tying arrangement—and because there is no argument in his brief as to this assignment of error other than as stated above, we do not further address this alleged error. See *Shipferling v. Cook*, 266 Neb. 430, 665 N.W.2d 648 (2003) (errors assigned but not argued will not be addressed on appeal).

### 3. Tortious Interference

Vande Guchte claims that the district court erred in failing to find that the defendants tortiously interfered with Vande Guchte's contract with Hoffman. A claim for tortious interference with a contract requires (1) a valid contract, (2) knowledge by the defendant of the contract, (3) an unjustified intentional act of interference on the part of the defendant, (4) proof that the interference caused the harm sustained, and (5) damage to the plaintiff. See *Hroch v. Farmland Indus.*, 4 Neb. App. 709, 548 N.W.2d 367 (1996).

Vande Guchte claims that the purchase agreement for the lot with Hoffman was breached due to the interference of the defendants. However, as we have decided in *Vande Guchte v. Hoffman*, No. A-03-1345, 2005 WL 2129101 (Neb. App. Sept. 6, 2005) (not designated for permanent publication), the sale of the lot to Hoffman failed because the purchase agreement between Vande Guchte and Hoffman, by its own terms, became null and void because the sale was contingent on Hoffman's

obtaining financing, which Hoffman could not. Pinnacle Bank would not finance Hoffman's purchase of the lot because of what the title company characterized as an unresolved "title issue." See *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994) (when cases are interwoven and interdependent and controversy has already been considered and determined in prior proceeding involving one of parties now before court, court has right to examine its own records and take judicial notice of its own proceedings and judgment in prior action). See, also, *Jessen v. Jessen*, 259 Neb. 644, 611 N.W.2d 834 (2000). We need not, and do not, address whether the title company was correct in its assessment of the title's condition or whether Pinnacle Bank was justified in refusing to extend financing. The fact is that Hoffman's performance under the purchase agreement was excused if he could not obtain financing, and he could not. The purchase agreement between Hoffman and Vande Guchte stated, "If the loan or assumption is not ultimately approved by the lending agency, this offer is null and void . . . ." Pinnacle Bank was "unable to approve" Hoffman's request because of an "UNRESOLVED TITLE ISSUE - RELEASE OF NOTICE FOR OPTION TO PURCHASE BY HERITAGE." Because Hoffman's inability to obtain financing, rather than any act of interference by the defendants, caused the failure of the Vande Guchte-Hoffman agreement, Vande Guchte failed to establish the fourth element of tortious interference. Therefore, the trial court did not err in granting summary judgment in favor of the defendants on this claim.

## VII. CONCLUSION

Based on the foregoing, the trial court did not err in granting the defendants' motion for summary judgment, dismissing Vande Guchte's complaint, and ordering Vande Guchte to specifically perform the terms required by the option agreement.

AFFIRMED.