CONTROLLED ENVIRONMENTS CONSTRUCTION, INC., A CALIFORNIA CORPORATION, APPELLANT, V. KEY INDUSTRIAL REFRIGERATION CO., A CALIFORNIA CORPORATION, DEFENDANT, HILL-PHOENIX, INC., A DELAWARE CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, AND REFRIGERATION EQUIPMENT SPECIALISTS, THIRD-PARTY DEFENDANT, APPELLEES.

670 N.W.2d 771

Filed October 31, 2003.    No. S-02-708.

David S. Houghton and J.P. Sam King, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., for appellant.

Mary Kay Frank, of Cline, Williams, Wright, Johnson & Oldfather, and Brian W. McGrath and G. Michael Halfenger, of Foley & Lardner, for appellee Hill-Phoenix, Inc.

Michael A. Nelsen, of Hillman, Forman, Nelsen, Childers & McCormack, for appellee Key Industrial Refrigeration Co.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

Controlled Environments Construction, Inc. (CEC), sued Key Industrial Refrigeration Co. (Key) and Hill-Phoenix, Inc., for breaches of contract and warranty arising out of two separate construction contracts to build refrigeration facilities in Omaha, Nebraska, and Minot, North Dakota. Essentially, CEC alleged that Hill-Phoenix sold defective refrigeration equipment to Key and that Key then sold that equipment to CEC for use in the construction projects they were undertaking for Food Services of America, Inc. (FSA). Only the warranty claims arising out of the Minot project are at issue in this appeal.

The district court determined that the Hill-Phoenix warranty extended to future performance and that the breach of warranty was or should have been discovered by CEC by January or February 1994. As such, the court concluded that CEC's warranty claims—filed in July 1998—were barred by the 4-year statute of limitations for the sale of goods, Neb. U.C.C. § 2-725 (Reissue 2001), and entered summary judgments for Hill-Phoenix and Key. CEC appeals.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In June 1992, CEC contracted with FSA to construct a building in Omaha. In June 1993, CEC entered into a second contract with FSA to construct a similar building in Minot. Shortly thereafter, CEC entered into agreements with Key. Under these agreements, Key was to design and provide the refrigeration equipment for the Minot and Omaha projects in accordance with the specifications set out in the contracts between FSA and CEC. As relevant here, Key was to provide a Hill-Phoenix Para-Temp Rack System (Rack System) and associated equipment at each location.

Hill-Phoenix provided a 1-year limited express warranty under which each Rack System was "WARRANTED TO BE FREE FROM DEFECTS IN MATERIAL AND WORKMANSHIP . . . FOR A PERIOD OF ONE YEAR." Hill-Phoenix also provided a 4-year extended warranty on compressors. In turn, Key extended the "manufacturer's One (1) year warranty against defects in material and workmanship in parts . . . to the owner."

FSA experienced failures of the refrigeration equipment almost immediately upon installation. The cause, nature, and severity of the failures in the Minot system are matters of dispute between the parties. It is clear, however, that for the next few years, CEC, Hill-Phoenix, and Key made repeated attempts to remedy the problems and provide FSA with a properly functioning refrigeration system.

On May 23, 1995, John Vana, the vice president of engineering of Hill-Phoenix, wrote a memorandum to CEC and others. In it, Hill-Phoenix promised to warrant the unit in Minot "for parts for one year with a four year extended warranty on the compressors to be honored," after certain changes were made to the Rack System. When asked in his deposition if Hill-Phoenix was extending a new warranty, Vana stated, "After the work was done we were going to warrant it as if it shipped from the factory," and that it was his "intent to extend the warranty for a year . . . from the time all changes were made." CEC contends that within 3 months after receipt of this memorandum, it had completed the changes requested by Hill-Phoenix.

The problems in Minot continued, and in a letter dated February 27, 1996, Hamid Shekarbakht, an employee of Hill-Phoenix, advised Gary Guesman, the president of CEC, that Hill-Phoenix would no longer participate in further attempts to resolve existing or future problems with the Rack System.

On July 16, 1998, CEC sued Hill-Phoenix and Key for breach of contract and breach of warranty based on the problems at the projects in Minot and Omaha. In general, CEC alleged that the refrigeration systems in Minot and Omaha repeatedly malfunctioned. More specifically, CEC alleged that the Hill-Phoenix Rack Systems were defective and that Key and Hill-Phoenix failed to fix the refrigeration systems.

Hill-Phoenix moved for summary judgment on January 19, 1999. By order dated June 1, 1999, the district court found there was no written contract between Hill-Phoenix and CEC, and granted summary judgment for Hill-Phoenix on CEC's contract claim. By the same order, the court found there was a genuine issue of material fact as to whether Hill-Phoenix breached its express limited warranty and the implied warranties of merchantability and fitness for a particular purpose. CEC is not appealing any part of this order.

On August 23, 2000, Hill-Phoenix filed a second motion for summary judgment. The court granted summary judgment for Hill-Phoenix on claims arising out of the Minot project, finding the statute of limitations had run on the warranty claims. The court denied Hill-Phoenix's motion for summary judgment on claims arising out of the Omaha project, finding material issues of fact remained as to whether CEC gave sufficient notice of the breach to Hill-Phoenix.

Key moved for summary judgment on December 13, 2001. The court granted Key's motion for summary judgment in part, finding CEC's causes of action arising out of the Minot project were barred by the statute of limitations. The court denied Key's motion for summary judgment on claims arising out of the Omaha project. On June 24, 2002, the court, finding no just reason to delay entry of a final judgment for some of the disputed claims, issued a final order pursuant to Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2000) on all of CEC's claims relating to the Minot project. As mentioned previously, only the warranty claims relating to the system in Minot are at issue in this appeal.

## III. ASSIGNMENTS OF ERROR

CEC assigns, restated and renumbered, that the court erred in (1) concluding that CEC's claims against Hill-Phoenix for breach of express and implied warranties on the Rack System were barred by the statute of limitations pursuant to § 2-725; (2) determining no genuine issue of material fact existed as to when CEC discovered or should have discovered the breach of warranty by Hill-Phoenix; (3) failing to find that Hill-Phoenix provided a new express warranty on or near August 23, 1995; (4) failing to find Hill-Phoenix breached its 4-year warranty on the compressors;

(5) determining the contract between Key and CEC was one for the sale of goods, governed by the Uniform Commercial Code; and (6) concluding that CEC's claims against Key for breach of express and implied warranties on the Rack System were barred by the statute of limitations pursuant to § 2-725.

## IV. STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Finch v. Farmers Ins. Exch.*, 265 Neb. 277, 656 N.W.2d 262 (2003).

■ In reviewing an order for summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Zannini v. Ameritrade Holding Corp.*, ante p. 492, 667 N.W.2d 222 (2003).

## V. ANALYSIS

### 1. FUTURE PERFORMANCE EXCEPTION

CEC and Hill-Phoenix agree that the transaction for the Rack System supplied by Hill-Phoenix is governed by the Nebraska Uniform Commercial Code and that the applicable statute of limitations for claims arising out of that sale is § 2-725. The relevant sections of § 2-725 state:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

CEC alleged, and the district court found, that the warranty issued by Hill-Phoenix explicitly extended to future performance, tolling the accrual of the statute of limitations until the breach of warranty was or should have been discovered by CEC. The warranty states, in relevant part:

> **ONE-YEAR WARRANTY.** MANUFACTURER'S PRODUCT IS WARRANTED TO BE FREE FROM DEFECTS IN MATERIAL AND WORKMANSHIP UNDER NORMAL USE AND MAINTENANCE FOR A PERIOD OF ONE YEAR FROM THE DATE OF ORIGINAL INSTALLATION. A NEW OR REBUILT PART TO REPLACE ANY DEFECTIVE PART WILL BE PROVIDED WITHOUT CHARGE, PROVIDED THE DEFECTIVE PART IS RETURNED TO MANUFACTURER. THE REPLACEMENT PART ASSUMES THE UNUSED PORTION OF THE WARRANTY.
>
> . . . .
> . . . The foregoing shall constitute the sole and exclusive remedy of any purchases and the sole and exclusive liability of Manufacturer in connection with this product.

The existence of future performance warranties has been a highly litigated area of law. See, 1 James J. White & Robert S. Summers, Uniform Commercial Code § 11-9 (4th ed. 1995) (listing cases); 2 William D. Hawkland, Uniform Commercial Code Series § 2-725:2 (2002) (listing cases); Annot., 81 A.L.R.5th 483 (2000) (listing cases). This court has examined the future performance exception a number of times. See, *Nebraska Popcorn v. Wing*, 258 Neb. 60, 602 N.W.2d 18 (1999); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992); *Hillcrest Country Club v. N.D. Judds Co.*, 236 Neb. 233, 461 N.W.2d 55 (1990); *Allan v. Massey-Ferguson, Inc.*, 221 Neb. 528, 378 N.W.2d 664 (1985); *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983); *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979). While not confronting similar warranty language, these cases provide us with three important guideposts: (1) a future performance warranty must be explicit, (2) a future performance warranty must be express, and (3) a limited warranty to repair or replace does not extend to future performance.

First, like most courts examining the future performance exception, this court has focused on the word "explicitly" in § 2-725(2). *Nebraska Popcorn*, 258 Neb. at 65, 602 N.W.2d at 23 ("warranty must *explicitly* extend to future performance" (emphasis in original)). Quoting from Webster's Third New International Dictionary, Unabridged (1981), the *Murphy* court stated: " 'Explicit' is defined as 'characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied . . . unreserved and unambiguous in expression: speaking fully and clearly.' . . . Synonyms for explicit include 'unequivocal,' 'definite,' 'specific,' 'express,' and 'categorical.' " 240 Neb. at 285-86, 481 N.W.2d at 430. Courts, including this one, focus on the word "explicitly" because the exception to § 2-725(2) is just that—an exception—and, as such, courts reason that it should be interpreted quite narrowly. See *Joswick v. Chesapeake Mobile*, 362 Md. 261, 765 A.2d 90 (2001).

■ Simply put, there is a "judicial reluctance to infer from the language of express warranties terms of prospective operation that are not clearly stated." *Binkley Company v. Teledyne Mid-America Corporation*, 333 F. Supp. 1183, 1186 (E.D. Mo. 1971), *affirmed* 460 F.2d 276 (8th Cir. 1972). See, also, *Crouch v. General Elec. Co.*, 699 F. Supp. 585 (S.D. Miss. 1988); 1 White & Summers, *supra*, § 11-9 at 608 ("this extension . . . does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods"). Thus, in order to constitute a future performance warranty, "the terms of the warranty must unambiguously indicate that the manufacturer is warranting the future performance of the goods for a specified period of time." *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983).

■ Second, because § 2-725 mandates that a warranty must explicitly extend to future performance, this court has held that only an express warranty will trigger the exception. *Nebraska Popcorn v. Wing*, 258 Neb. 60, 65, 602 N.W.2d 18, 23 (1999) ("in order to meet the exception based on a warranty of future performance, the warranty must be an express rather than an implied warranty"); *Murphy*, 240 Neb. at 286, 481 N.W.2d at 430 ("the exception applies only to an express warranty and not to an implied warranty"). As only express warranties may trigger the

future performance exception, CEC's implied warranty claims, against both Hill-Phoenix and Key, were barred by the statute of limitations 4 years after the delivery of the Rack System—on or about July 24, 1997—well before CEC filed this suit.

Third, this court has found that a limited warranty to repair or replace does not extend to future performance. *Nebraska Popcorn, supra.* The justification is that a warranty to repair or replace goods only "anticipates potential defects and specifies the buyer's remedy during the stated period" and does not "explicitly guarantee the proper performance of goods for some period of time into the future." *Id.* at 67, 602 N.W.2d at 24. See, also, *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979).

Contrary to assertions by Hill-Phoenix, *Nebraska Popcorn, supra,* is not dispositive. The warranty at issue in *Nebraska Popcorn* provided that " '[the manufacturer] warrants to the original purchaser that it will repair or replace, at its option, any part of a . . . product which, in [the manufacturer]'s judgment, is defective in material or workmanship for a period of one (1) year from the date of shipment.' " 258 Neb. at 68, 602 N.W.2d at 24. In addition, the statement of limited warranty provided:

> "[The manufacturer] warrants to the original purchaser that it will repair or replace, at its option, any load cell supplied with a motor truck scale which, in [the manufacturer]'s judgment, is defective in material or workmanship for a period of two (2) years from the date of original shipment. This warranty expressly excludes any load cell damaged by lightening, overvoltage, overloading, or submersion."

*Id.* Based on this language, we found the aforementioned warranty to be a limited warranty to repair or replace, and as such, we determined, like the overwhelming majority of other jurisdictions, that such a warranty does not extend to future performance. *Id.*

■ Although the Hill-Phoenix warranty contains repair or replace language, the mere existence of such language does not necessarily lead to the conclusion that the warranty does not extend to future performance. See *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) ("[w]e do not believe that the presence of language limiting the remedy to replacement of defective materials, by itself, is determinative of

the exact nature of the warranties in question"). See, also, *Nebraska Popcorn*, 258 Neb. at 67, 602 N.W.2d at 24 ("a warranty to repair or replace, *without more*, is not an explicit warranty of future performance" (emphasis supplied)). Instead, courts have noted the difference between a warranty of a good's future performance and a limitation of remedy in the event of a breach of that warranty, see *Shatterproof Glass Corp., supra*, and *Joswick v. Chesapeake Mobile*, 362 Md. 261, 765 A.2d 90 (2001), finding the existence of the latter does not bear on the existence of the former. See *Joswick*, 362 Md. at 269, 765 A.2d at 94 ("a commitment to repair or replace defective parts" does not "convert a warranty that *does* extend to future performance into one that does not do so" (emphasis in original)). Thus, the mere existence of repair and replace language will not disturb a finding that the warranty extends to future performance. *Id.* See, also, *Shatterproof Glass Corp., supra*; *Standard Alliance Ind. v. Black Clawson Co.*, 587 F.2d 813 (6th Cir. 1978), *cert. denied* 441 U.S. 923, 99 S. Ct. 2032, 60 L. Ed. 2d 396 (1979); *Executone v IPC Communications*, 177 Mich. App. 660, 442 N.W.2d 755 (1989).

The Hill-Phoenix warranty promises that the Rack System will be "free from defects in material and workmanship . . . for a period of one year." This warranty guarantees that the goods will be free from defects for a certain period of time. And although the warranty contains no explicit reference to any particular kind or level of performance of the good, "the quality of the goods, which underlies an expected performance, is warranted for a certain period of time and, absent a sooner manifestation, the buyer will not know whether there has been a breach until that time has expired." *Joswick*, 362 Md. at 273, 765 A.2d at 96 (discussing nearly identical warranty language, including similar remedy limitation).

We believe the following analysis of the Maryland Court of Appeals is persuasive:

> If the seller affirms that the goods will have a certain quality or be free from defects for a stated period of time, that constitutes a warranty that the goods will conform to that affirmation and have that quality throughout the stated period, and thus explicitly extends to the future. Moreover, the quality of the goods, either by positive attribute or by

negation of defects, necessarily relates to their performance. If the goods do not have the stated quality or develop a defect warranted against, they likely will not perform in the manner of goods that conform to the promise and thus in the manner that is reasonably anticipated by the parties. A warranty that goods will have a certain quality or be free from defects for a stated time thus . . . explicitly extends to future performance . . . .

*Id.* at 273-74, 765 A.2d at 96-97.

Other courts that have examined similar warranty language agree with the conclusion of *Joswick*. For example, the Eighth Circuit has found the future performance exception applicable on two occasions. In *Grand Island Exp. v. Timpte Industries, Inc.*, 28 F.3d 73, 75 (8th Cir. 1994), the court found Timpte's warranty that its trailers would be " 'free from defects in materials and workmanship for a period of five years' " explicitly extended to future performance under Nebraska law. Likewise, in *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 822 n.3 (8th Cir. 1983), the court determined a warranty extended to future performance when the seller warranted its " 'insulating glass units for a period of twenty (20) years from the date of manufacture against defects in material or workmanship . . . .' "

Our discussion of the issue in *Nebraska Popcorn v. Wing*, 258 Neb. 60, 602 N.W.2d 18 (1999), also supports the conclusion that the Hill-Phoenix warranty extends to future performance. In *Nebraska Popcorn*, 258 Neb. at 68, 602 N.W.2d at 24, this court found that the warranty did not extend to future performance because it "did not explicitly guarantee the future performance of the scale for any number of years nor did it give a warranty that the scale would be *free of defects for any number of years.*" (Emphasis supplied.) At a minimum, we acknowledged that a warranty which promises that a good shall be free from defects for a stated period of time may explicitly extend to future performance.

In an attempt to support its interpretation of *Nebraska Popcorn, supra*, Hill-Phoenix cites a variety of cases rejecting claims of a warranty of future performance. These cases, however, have been overruled or are easily distinguishable. Initially, Hill-Phoenix relies on the opinion of the Court of Special Appeals in *Joswick v.*

*Chesapeake Mobile Homes*, 130 Md. App. 493, 747 A.2d 214 (2000), but as discussed and cited above, the Maryland Court of Appeals issued an opinion rejecting the logic, reasoning, and conclusions of the Court of Special Appeals. *Joswick v. Chesapeake Mobile*, 362 Md. 261, 765 A.2d 90 (2001).

Hill-Phoenix also cites *Kline v. U.S. Marine Corp.*, 882 S.W.2d 597 (Tex. App. 1994), which found that a warranty that contained language similar to that at issue here did not extend to future performance. The court, however, relied exclusively on *Muss v. Mercedes-Benz of North America*, 734 S.W.2d 155 (Tex. App. 1987), which examined warranty language similar to that in *Nebraska Popcorn, supra*. Like this court in *Nebraska Popcorn*, the *Muss* court found the warranty language constituted a limited warranty of repair and replacement that did not extend to future performance. *Muss, supra*.

While the *Muss* opinion is an accurate statement of the law, the court in *Kline, supra*, failed to appreciate the difference between a warranty of a good's future performance and a limitation of remedy in the event of a breach of that warranty. See, *Shatterproof Glass Corp., supra*; *Joswick, supra*. Lastly, Hill-Phoenix cites *Allis-Chalmers v. Herbolt*, 17 Ohio App. 3d 230, 236, 479 N.E.2d 293, 300 (1984), but the warranty at issue in that case only guaranteed that the good would be free from defects " 'at the time of shipment.' " Thus, the quality of the good was not warranted into the future, and the warranty in *Allis-Chalmers* is factually distinguishable from the Hill-Phoenix warranty.

In sum, the district court did not err in finding that the Hill-Phoenix warranty explicitly extends to future performance.

## 2. DISCOVERY OF BREACH

■ When a warranty extends to future performance, as it does here, the statute of limitations is tolled and the cause of action does not begin to accrue until the breach of that warranty is or should have been discovered. § 2-725(2). Thus, the district court had to determine whether there was a genuine issue of material fact concerning the timeframe at which CEC discovered, or should have discovered, that the Rack System in Minot was defective. See *id*.

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Finch v. Farmers Ins. Exch.*, 265 Neb. 277, 656 N.W.2d 262 (2003).

(a) Hill-Phoenix's Motion for Summary Judgment

The district court, relying solely on CEC's second amended petition, which stated that the "failures began within weeks of the startup," found that CEC knew or should have known of the breach in January or February 1994. CEC contends the court erred because the earliest CEC could have possibly known of the breach was July 28, 1994, when Thomas Nau, Jr., a partner in Refrigeration Equipment Specialists, received a report from Robert Funderburk of Hill-Phoenix listing various changes to the Rack System that Hill-Phoenix needed to make immediately. Obviously, an accrual date of July 28, 1994, would make CEC's July 16, 1998, claims timely.

As Hill-Phoenix points out, this court has stated that "[t]he point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong." *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 453, 590 N.W.2d 380, 389-90 (1999), citing *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996), and *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994). Accord, *Andersen v. A.M.W., Inc., ante* p. 238, 665 N.W.2d 1 (2003); *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002); *Blankenau v. Landess*, 261 Neb. 906, 626 N.W.2d 588 (2001). However, this level of deference does not apply to an appellate court's review of a grant of summary judgment under § 2-725(2). The governing standard of review for an order of summary judgment should be, and continues to be, one favorable to the nonmoving party. An appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible

from the evidence. *Zannini v. Ameritrade Holding Corp., ante* p. 492, 667 N.W.2d 222 (2003).

This court has not previously analyzed when a party should "discover" a breach under § 2-725(2). We are guided, however, by the Eighth Circuit's analysis in *R.W. Murray, Co. v. Shatterproof Glass Corp.*, 758 F.2d 266 (8th Cir. 1985), and *Grand Island Exp. v. Timpte Industries, Inc.*, 28 F.3d 73 (8th Cir. 1994), two cases that analyzed discovery under the future performance exception to § 2-725. In *Shatterproof Glass Corp.*, the Eighth Circuit upheld the district court's determination that the discovery of relatively few defective glass panels did not compel a finding that the buyer should have discovered the extensive nature of the panel failures.

In *Timpte Industries, Inc., supra*, Grand Island Express bought 52 trailers from Timpte Industries in 1984. By 1986, Grand Island Express began experiencing problems with the trailers' floors, and by May 1986, Grand Island Express made its first floor repairs. By June and July 1987, it was repairing 4 or 5 trailer floors a month, and by August 1987, at least 14 repairs were made on 12 trailers. The Eighth Circuit found that Grand Island Express should have discovered the breach of warranty prior to August 1987 and went on to distinguish *Shatterproof Glass Corp.* by noting that there, the plaintiffs discovered relatively few defects. *Timpte Industries, Inc., supra.*

We read these cases to stand for what seems both obvious and logical, namely, that when goods are warranted against defects, the discovery analysis should focus on the buyer's knowledge of the nature and extent of the problem(s) with the goods. It is only when a buyer discovers, or should have discovered, facts sufficient to doubt the overall quality of the goods that § 2-725(2) is satisfied and that the statute of limitations begins to run.

A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999). The record is clear that Hill-Phoenix proved its prima facie case. More specifically, the record contains evidence, which if uncontroverted, would support a finding that CEC discovered the breach in January or February 1994. For example, CEC's second amended petition stated that following

installation of the refrigeration equipment, "FSA experienced repeated failures of the . . . Hill-Phoenix equipment," the Hill-Phoenix equipment did not function properly, and the "failures began within weeks of the startup of the systems."

In addition, Guesman, president of CEC, stated in his affidavit that "the Hill Phoenix rack systems began to fail immediately upon installation." Nau stated that "shortly after completion of installation and start-up at both projects, the rack refrigeration systems designed and manufactured by Phoenix experienced problems and failures."

Moreover, on January 12, 1994, Bob Henriksen of CEC wrote David Smith of Key complaining that the "refrigeration system . . . appears to be incapable of sustained operation." On February 14, Henriksen again wrote Smith, noting that there were "continuing problems with the refrigeration system" and that the "rack unit still will not run reliably." Additional evidence shows that Hill-Phoenix made repairs and replaced parts on the Rack System. We conclude that Hill-Phoenix established its prima facie case.

After the movant makes a prima facie case for summary judgment, the burden to produce evidence showing the existence of a material issue of fact that prevents summary judgment as a matter of law shifts to the party opposing the motion. *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). Giving CEC all reasonable inferences, we cannot say as a matter of law that the breach of warranty was discovered or should have been discovered by CEC in January or February 1994. We find that a genuine issue of material fact exists as to when CEC discovered or should have discovered the breach of warranty.

As noted above, establishing a discovery date under § 2-725(2) is largely an inquiry into the buyer's knowledge of the problems with the goods—here, the Rack System. In this case, there is no doubt that the record contains substantial evidence that the Rack System in Minot did not function properly. However, the record also contains evidence that disputes the cause and severity of the problems. We note that it is difficult to tell from the present record what CEC knew in early 1994 and what allegations concerning early 1994 are based on information obtained after February 1994. Where ambiguity exists in a summary judgment proceeding, we resolve such matters in favor

of the nonmoving party. See *Zannini v. Ameritrade Holding Corp., ante* p. 492, 667 N.W.2d 222 (2003).

First, the record shows that not everyone was certain that the Rack System was the cause of the problems as of January or February 1994. For example, a January 17, 1994, letter from Smith to Henriksen stated that some of the problems could be the result of Hill-Phoenix's failure to complete startup of the unit. Likewise, in his deposition, Shekarbakht stated his belief that the problems in Minot were due, at least in part, to the improper installation of the Rack System. Concerns about installation were also noted by Daniel Vaow of Hill-Phoenix.

In addition, the record contains evidence that as of January or February 1994, certain parties believed the problems were caused, at least in part, by the accessibility of the equipment or the weather in Minot. In his deposition, Gary Karnes of Hill-Phoenix stated that he understood the problems were those of the refrigeration system as a whole and not the Rack System in particular.

In Guesman's deposition, he stated that Hill-Phoenix shifted all of the blame for the problems in Minot to other parties or factors and never admitted to a possible problem with the Rack System itself. As Hill-Phoenix notes, the Eighth Circuit in *Grand Island Exp. v. Timpte Industries, Inc.*, 28 F.3d 73 (8th Cir. 1994), rejected the buyer's contention that it should not have discovered the breach because the seller asserted the problems with the goods were caused by something extraneous to the goods. However, unlike the record in the instant case, the severity of the problems with the actual goods in *Timpte Industries, Inc.* clearly established the buyer's discovery of the breach. The determination of a discovery date is essentially an inquiry into all of the facts and circumstances facing the buyer; thus, a court should examine all relevant evidence that bears on the buyer's discovery. In *Timpte Industries, Inc.*, the Eighth Circuit merely states that denials of a defect by the seller may not prolong discovery of a breach of warranty in the face of overwhelming evidence to the contrary.

Obviously, the problems listed above, including problems related to the startup and installation of the Rack System, would not relate to the quality of the Rack System itself and, therefore, do not automatically lead to the conclusion that CEC discovered

the Rack System itself was defective. Simply put, there is a difference between defective goods and goods that are malfunctioning because of extraneous causes, and knowledge of the latter does not necessarily lead to the discovery of the former.

Second, the record contains some evidence that the initial problems occurring with the Rack System were insignificant and correctable. For example, on February 1, 1994, Nau wrote to Smith stating that the serviceman's report indicated that "he had no problem in getting the system operational except properly setting the controls and using the controller as designed." According to a fax transmission dated March 1, 1994, minor changes were again made in March which convinced parties overseeing the repair work in Minot that the system would begin to work. We conclude that these facts dispute the severity of the problems with the Rack System and, together with the aforementioned evidence disputing the cause of the problems in Minot, create a genuine issue of material fact as to when the breach was or should have been discovered by CEC.

After viewing the evidence in a light most favorable to CEC and giving it the benefit of all reasonable inferences, we determine that the district court erred in concluding that, as a matter of law, the breach of warranty was or should have been discovered by CEC in January or February 1994. We find that a genuine issue of material fact exists as to when the breach of warranty was or should have been discovered; thus, the summary judgment granted by the district court in favor of Hill-Phoenix is reversed and the cause remanded for further proceedings.

(b) Key's Motion for Summary Judgment

CEC argues that the district court erred in not finding its contract with Key was predominantly for the rendition of services, governed by the 5-year statute of limitations for breach of a written contract. See Neb. Rev. Stat. § 25-205 (Reissue 1995). We find this argument to be without merit. CEC's written proposal to Key, which was offered and received in evidence, shows that the transaction was predominantly one for goods, and therefore, § 2-725 is applicable.

Key moved for summary judgment, and on January 24, 2002, a hearing was held on the motion. There were certain exhibits

offered and received by both parties at the hearing, but neither party offered the evidence already received by the court from the prior Hill-Phoenix summary judgment proceeding. In its order granting summary judgment on CEC's Minot-based claims, the court stated that it was relying on the facts it included in its order granting summary judgment for Hill-Phoenix. CEC argues that the court erred in relying on evidence that was offered and received for the Hill-Phoenix motion for summary judgment but was not offered and received for Key's motion for summary judgment.

To the extent the trial court relied on evidence not marked, offered, and received into evidence in Key's motion for summary judgment, it erred. Summary judgment is proper when the pleadings and the evidence *admitted at the hearing* disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Finch v. Farmers Ins. Exch.*, 265 Neb. 277, 656 N.W.2d 262 (2003).

■■■ In connection with a motion for summary judgment, " '[u]nless the [evidence] is marked, offered, and [received], it does not become part of the record and cannot be considered by the trial court as evidence in the case.' " *Hogan v. Garden County*, 264 Neb. 115, 120, 646 N.W.2d 257, 261 (2002), quoting *Altaffer v. Majestic Roofing*, 263 Neb. 518, 641 N.W.2d 34 (2002). Even though we cannot specifically ascertain from the record what evidence was improperly relied upon by the court, it is apparent from statements in the court's order that the court was relying on evidence that was offered and received in a separate proceeding (i.e., the Hill-Phoenix summary judgment proceeding). The court erred in that regard, and in the absence of an order untainted by consideration of evidence that was offered and received in the separate Hill-Phoenix summary judgment proceeding, we must reverse the grant of summary judgment in favor of Key.

### 3. "New" Express Warranty

Because we reverse the district court's grant of summary judgment for Hill-Phoenix, we need not consider CEC's claim that Hill-Phoenix issued a new express warranty on the Rack System in 1995.

### 4. EXTENDED WARRANTY ON COMPRESSORS

As it did to CEC's claims arising out of the manufacturer's warranty, discussed above, the district court also ruled that CEC's claims against Hill-Phoenix for breaching its 4-year warranty on the compressors in the Rack System were barred by § 2-725. CEC argues the court erred in not finding Hill-Phoenix breached this separate warranty. CEC's argument is without merit.

The 4-year warranty given to CEC by Hill-Phoenix was separate and distinct from the 1-year express warranty against defects in the Rack System. This Hill-Phoenix warranty simply provided for a "FOUR YEAR EXTENDED COMPRESSOR WARRANTY." CEC has never suggested this warranty extended to future performance, and it is clear that it does not. Thus, under § 2-725, the statute of limitations began to accrue upon tender of delivery—here, July 24, 1993—and CEC's claim for breach of the extended warranty was barred by July 1997, almost a full year before its July 1998 filing.

Alternatively, CEC argues that Hill-Phoenix issued a new 4-year extended warranty on the compressors in 1995. If a new warranty was given, CEC asserts, its 1998 claim for breach of warranty would be timely. The court found the alleged warranty extension by Hill-Phoenix did not "implicate" the statute of limitations. Prior to deciding if the 1995 memorandum did in fact give CEC a new warranty, we need to determine whether a warranty can be given postsale and, if so, whether it starts the statute of limitations running anew.

Section 2-725(1) prohibits the parties, at least by original agreement, from extending the statute of limitations. Some courts, however, relying on Unif. Commercial Code § 2-313, 1A U.L.A. 101 (1989), allow a seller to extend a new express warranty or modify a contract of sale after the sale has been completed. See, *Bigelow v. Agway, Inc.*, 506 F.2d 551 (2d Cir. 1974) (statement by manufacturer's agent, made after delivery, that machine could safely bale hay with 32-percent moisture content may have constituted modification of warranty); *Glyptal Inc. v. Engelhard Corp.*, 801 F. Supp. 887 (D. Mass. 1992) (postsale telephone conversation could create express warranty); *Phillips Petroleum v. Bucyrus-Erie Co.*, 131 Wis. 2d 21, 388 N.W.2d 584 (1986) (incorporation into approval drawings, after sale, of

specification for grade of steel, created express warranty by modification of original contract); *Jones et al. v. Abriani,* 169 Ind. App. 556, 350 N.E.2d 635 (1976) (promises made to buyers of mobile home after contract of purchase was signed, including promise that all defects would be repaired, amounted to express warranty). Other courts have concluded that once a legally binding contract exists, subsequent affirmations and/or statements are not part of the basis of the bargain because the buyer could not have relied on them in making the deal. See, *Global Truck & Equipment Co. v. Palmer Mach. Works,* 628 F. Supp. 641 (N.D. Miss. 1986); *Roxalana Hills, Ltd. v. Masonite Corp.,* 627 F. Supp. 1194 (S.D.W. Va. 1986), *affirmed* 813 F.2d 1228 (4th Cir. 1987); *Fitzner Pontiac-Buick-Cadillac v. Smith,* 523 So. 2d 324 (Miss. 1988); *Terry v. Moore,* 448 P.2d 601 (Wyo. 1968); *Byrd Motor Lines v. Dunlop Tire and Rubber,* 63 N.C. App. 292, 304 S.E.2d 773 (1983).

Courts that are willing to find a valid postsale modification or new warranty make two key inquiries prior to such a finding. First, obviously, the court must find that the statement or affirmation by the seller is a warranty. Clearly, the 1995 memorandum by Vana is an explicit obligation which satisfies this first step. Second, and more importantly, to the extent a seller can create a postsale warranty or modification of the contract for sale, this ability appears to be limited in time. Comment 7 to § 2-313 states:

> The precise time when words of description or affirmation are made or samples are shown is not material. The sole question is whether the language or samples or models are *fairly to be regarded as part of the contract.* If language is used after the closing of the deal (as when the buyer when taking delivery asks and receives an additional assurance), the warranty becomes a modification, and need not be supported by consideration if it is otherwise reasonable and in order (Section 2-209).

(Emphasis supplied.) Unif. Commercial Code, 1A U.L.A. at 103.

In interpreting this comment, respected commentators have concluded that comment 7 "contemplate[s] only the cases of face-to-face dealings that occur while the deal is still warm," and "urge a different rule for seller's statements made more than

a short period beyond the conclusion of the agreement." 1 James J. White & Robert S. Summers, Uniform Commercial Code § 9-5 at 498 (4th ed. 1995). Thus, it is unlikely that Hill-Phoenix effectuated a modification of the old warranty, or created a new warranty, as the memorandum was written 2 years after delivery of the good.

In any event, even if we assume Hill-Phoenix could extend a new postdeal warranty to CEC, CEC's claim is still barred unless the new warranty either extends the statute of limitations or starts a new accrual date. The plain language of § 2-725 states that the cause of action on a claim of breach of warranty accrues upon tender, except when the warranty extends to future performance. On its face, § 2-725 is limited to only two accrual date possibilities. There is no exception for new express warranties extended postsale, and the creation of such an exception is a matter within the province of the Legislature, not this court.

Support for a narrow reading of § 2-725 can be found by examining the purpose behind the provision. The limitations period was designed to be relatively short to serve as a point of finality for businesses after which they could destroy records without the fear of subsequent suits. See *Ontario Hydro v. Zallea Systems, Inc.*, 569 F. Supp. 1261 (D. Del. 1983). See, also, *Sudenga Industries v. Fulton Performance Products*, 894 F. Supp. 1235 (N.D. Iowa 1995); *Rose City Paper Box v. Egenolf Graphic Mach.*, 827 F. Supp. 646 (D. Or. 1993).

> In the usual circumstances . . . defects are apt to surface within [the 4-year] time period, and the few odd situations where this is not the case, resulting in hardship to the buyer, are thought to be outweighed by the commercial benefit derived by allowing the parties to destroy records with reasonable promptness.

2 William D. Hawkland, Uniform Commercial Code Series § 2-725:2 at 2-677 to 2-678 (2002). Hence, the finality necessary to promote the flow of commerce is effectuated by the limitation period. *Ontario Hydro, supra.*

The tender of the compressors occurred July 24, 1993, barring CEC's claim for breach of the 4-year compressor warranty by July 24, 1997. The court was correct in finding CEC's July 1998 claim was barred by the statute of limitations.

## VI. CONCLUSION

The district court correctly determined that CEC's claims for breaches of the extended warranty on the compressors and the implied warranty on the Rack System were barred by the statute of limitations. Like the district court, we determine that Hill-Phoenix's express warranty on the Rack System explicitly extended to future performance. The court erred, however, in concluding that, as a matter of law, the breach of the express warranty was or should have been discovered by CEC by January or February 1994. There is a genuine issue of material fact as to when CEC knew or should have known of the breach of warranty. For the reasons set forth herein, the summary judgments entered by the court in favor of Hill-Phoenix and Key are both reversed, and the cause is remanded for proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT and McCORMACK, JJ., not participating.