NEBRASKA HOSPITAL ASSOCIATION CHARITABLE, SCIENTIFIC, AND EDUCATIONAL FOUNDATION, DOING BUSINESS AS BIO-ELECTRONICS, APPELLANT, V. C & J PARTNERSHIP, A NEBRASKA GENERAL PARTNERSHIP, ET AL., APPELLEES.

682 N.W.2d 248

Filed July 2, 2004.    No. S-03-068.

Charles M. Pallesen, Jr., and Jeffrey E. Mark, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Tim Engler, of Harding, Shultz & Downs, for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Appellant, Nebraska Hospital Association Charitable, Scientific, and Educational Foundation doing business as Bio-Electronics (Bio-Electronics), brought an action for specific performance of a real estate purchase agreement against appellees, C & J Partnership, Krieger Family Children's Trust, Chuck Uribe, John Daubert, and Albert Pepler (collectively C & J Partnership). Bio-Electronics and C & J Partnership filed motions for summary judgment and for partial summary judgment, respectively. The district court for Lancaster County, Nebraska, sustained C & J Partnership's partial motion for summary judgment and dismissed Bio-Electronics' petition for specific performance. The issue we must resolve is whether a genuine issue of material fact exists regarding which party to a real estate transaction must bear the loss when funds are embezzled by an escrow agent before closing.

## BACKGROUND

The parties in this action have a long history together. At the time this action was filed, the real property at issue in this case had been the subject of an ongoing lease agreement between Bio-Electronics and C & J Partnership for over 15 years. On November 9, 2001, Bio-Electronics offered to purchase the leased property located in Lincoln, Nebraska, for $152,000. A few days later, C & J Partnership accepted Bio-Electronics' offer by and through one of its partners, Uribe. The sale was scheduled to close on December 20, 2001, at the offices of State Title Services, Inc. (State Title), in Lincoln.

At the scheduled closing on December 20, 2001, Bio-Electronics delivered a cashier's check made payable to C & J Partnership for the agreed-upon net purchase price. Uribe signed

the back of the check on behalf of C & J Partnership. The closing, however, was not completed on that date because one of C & J Partnership's partners had not yet signed the warranty deed.

In their briefs, both parties describe State Title as the escrow agent. Bio-Electronics describes the nature of this case as "this dispute was not completed because the purchase price that was placed in escrow with a title company was embezzled." Brief for appellant at 2. C & J Partnership states that "State Title served as the title company as well as the escrow/title agent . . . ." Brief for appellees at 5. We will, therefore, treat this as an escrow case.

On January 28, 2002, before the warranty deed was fully executed, State Title filed for chapter 7 bankruptcy as the result of an alleged embezzlement of corporate funds by its president. Among the funds embezzled were $152,870 from the December 20, 2001, scheduled closing. The real property at issue is currently encumbered by a deed of trust from C & J Partnership to Union Bank and Trust Company.

On February 15, 2002, Bio-Electronics filed a petition for specific performance in the district court. The petition requested that the court compel C & J Partnership to do equity and (1) release from escrow and deliver to Bio-Electronics the warranty deed of conveyance with clear title or execute and deliver to Bio-Electronics a substitute warranty deed with clear title and (2) to compel C & J Partnership to cause the property at issue to be released from the deed of trust to Union Bank and Trust Company.

Bio-Electronics contended in its motion for summary judgment that it delivered payment for the real estate to C & J Partnership, giving C & J Partnership dominion and control over the funds. As such, Bio-Electronics contended that C & J Partnership failed to perform under the purchase agreement by wrongfully withholding a fully executed warranty deed. In its cross-motion, C & J Partnership contended, in relevant part, that Bio-Electronics was the rightful owner of the funds when they were embezzled by the escrow agent. Accordingly, C & J Partnership contended that Bio-Electronics breached the purchase agreement by failing to deliver the purchase price to C & J Partnership.

During the hearing on the parties' motions, C & J Partnership admitted that because the parties had contemplated exchanging

the deed and purchase price during the December 20, 2001, closing, an escrow had not been established for the closing. In Uribe's affidavit, which was admitted into evidence at the hearing, Uribe stated that he signed the back of the cashier's check on behalf of C & J Partnership in order to allow Bio-Electronics to deposit the proceeds in escrow with State Title. The evidence is inconclusive regarding whether the unexecuted warranty deed is currently in escrow with State Title, as Bio-Electronics contends, or was simply left with State Title on December 20 pending closing, as C & J Partnership contends.

The district court granted C & J Partnership's motion for partial summary judgment and denied Bio-Electronics' motion for summary judgment. The district court noted that the issue in this case centered on which party must bear the loss of funds apparently embezzled by the title agent. The court noted that both parties agreed that the general rule applicable in this case is that if an escrow agent " 'embezzles the funds before the time has come to release them, he has embezzled the funds of the depositor.' " That is, the district court noted, the wrong of an escrow holder must be borne by the party who, at the time of its occurrence, was lawfully entitled to the right or property affected.

The district court recognized that to circumvent the general rule that absconded funds are the funds of the depositor, there must be a finding that the funds had been transferred to another party. The court stated that Uribe's endorsement of the cashier's check did not give control of the funds to C & J Partnership because C & J Partnership had not yet delivered a fully signed warranty deed. The court found that State Title was to have served as Bio-Electronics' agent to protect its funds and as C & J Partnership's agent to protect its real estate. At oral argument, Bio-Electronics contended that because of a long relationship between the parties, it was not insisting on an escrow to deliver the $152,870 cashier's check. The record is not clear which party, Bio-Electronics, C & J Partnership, or State Title requested the escrow. The district court concluded that Bio-Electronics retained title to the funds and, accordingly, that Bio-Electronics bore the risk of loss.

While the district court found that specific performance was an appropriate remedy, it concluded that it would be inequitable

under the circumstances to order Bio-Electronics' specific performance under the terms of the contract. Accordingly, the district court overruled both parties' respective requests for specific performance and granted C & J Partnership's request to dismiss the petition.

## ASSIGNMENTS OF ERROR

Bio-Electronics assigns that the district court erred in concluding that (1) the loss of the embezzled funds must fall on Bio-Electronics because the evidence clearly established that the funds were transferred to C & J Partnership before they were embezzled; (2) Bio-Electronics breached the purchase agreement because Bio-Electronics fully performed all conditions pursuant to the purchase agreement; and (3) the loss should fall on Bio-Electronics because, as between these two innocent parties, C & J Partnership's inaction set in motion the events that allowed the funds to be embezzled by State Title.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn.*, 267 Neb. 158, 673 N.W.2d 15 (2004); *Controlled Environ. Constr. v. Key Indus. Refrig.*, 266 Neb. 927, 670 N.W.2d 771 (2003).

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Misle v. HJA, Inc.*, 267 Neb. 375, 674 N.W.2d 257 (2004); *Lalley v. City of Omaha*, 266 Neb. 893, 670 N.W.2d 327 (2003).

## ANALYSIS

Bio-Electronics contends that the evidence admitted at the hearing on the parties' respective motions for summary judgment clearly establishes that Bio-Electronics transferred the funds to C & J Partnership before they were deposited with State Title. Bio-Electronics contends that its delivery to Uribe of the

cashier's check made payable to C & J Partnership constituted a negotiation under article 3 of the Nebraska Uniform Commercial Code (U.C.C.). As such, Bio-Electronics contends that ownership of the funds was transferred to C & J Partnership.

Both parties contend in their briefs that the controlling rule of law in this case is that if an escrow agent "embezzles the funds before the time has come to release them, he has embezzled the funds of the depositor." See 28 Am. Jur. 2d *Escrow* § 31 at 30 (2000). Several other jurisdictions have adopted the general rule that " '[i]f the property in the custody of the escrow holder is either embezzled or lost by it, then, as between the seller and the buyer, the loss falls on the one who owns the property at the time of the embezzlement or loss.' " *Bixby Ranch Co. v. U.S.*, 35 Fed. Cl. 674, 679 (1996). See, *Schmidt et ux. v. Fitzsimmons et ux.*, 190 Or. 415, 226 P.2d 304 (1951); *Stuart v. Clarke*, 619 A.2d 1199 (D.C. App. 1993); *Zaremba v. Konopka*, 94 N.J. Super. 300, 228 A.2d 91 (1967).

Bio-Electronics contends article 3 of the U.C.C., which governs negotiable instruments, including cashier's checks, applies to determine who had ownership of the funds in question. "Negotiation" is defined under the U.C.C. as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." Neb. U.C.C. § 3-201(a) (Reissue 2001). Comment 2 to U.C.C. § 3-201 provides that the remitter is the owner of the check until ownership is transferred to the seller by delivery. The "[r]emitter" of a negotiable instrument is "a person who purchases an instrument from its issuer if the instrument is payable to an identified person other than the purchaser." Neb. U.C.C. § 3-103(11) (Reissue 2001). In this case, Bio-Electronics is the remitter of the cashier's check made payable to C & J Partnership. An instrument is deemed transferred "when it is delivered by a person other than its issuer *for the purpose of giving to the person receiving delivery the right to enforce the instrument.*" (Emphasis supplied.) Neb. U.C.C. § 3-203(a) (Reissue 2001).

At the December 20, 2001, closing, Bio-Electronics presented the cashier's check to C & J Partnership. Uribe, of C & J Partnership, took possession or delivery of the cashier's check

and endorsed it. The possession of the cashier's check, therefore, went from Bio-Electronics to Uribe, of C & J Partnership, who endorsed the check, and then to State Title. The undisputed facts show that the check was negotiated and that C & J Partnership is the "depositor." As the depositor, C & J Partnership bears the risk of loss of embezzlement by the escrow agent with whom C & J Partnership deposited the funds. Contrary to the district court's ruling, C & J Partnership did not show it was entitled to judgment as a matter of law, and we must reverse the district court's orders on summary judgment.

## CONCLUSION

We reverse the holding of the district court, vacate the order of dismissal, and remand the cause with directions to enter an order granting the specific relief sought by Bio-Electronics.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.